ARCHIBALD REID, by Peter J. McKinlay, his committee, vs. NOAH FITCH and others.

Where the committee of a lunatic purchases real estate and takes the convey-
ance to himself, in violation of his trust, and pays the consideration with
money belonging to the lunatic, a trust results in favor of the lunatic; and
this trust is retained by the 1 R. S. 728, § 53, and is turned into a legal
estate by the 45th section of the same article; (1 R. S. 728, § 45;) and
it is liable to be sold on execution; and descends to the heir at law, if not
otherwise disposed of.
A resulting trust may be proved by parol.

THIS was an action to recover the undivided half of about
thirty-five acres of land, situate in the town of Johnstown, in the
county of Fulton. The plaintiff's title was derived by descent
from his mother Catherine Reid. It was proved that in 1835
the said Catherine Reid was found a lunatic, by inquisition, and
Thomas Reid was duly appointed by the court of chancery, com-
mittee of her person and estate. As such committee, he received,
on the 1st of December, 1836, the arrearages of a pension from
the United States, belonging to said lunatic, amounting to $3300
at one time, and about $600 more at subsequent times; and in
December, 1836, he purchased the land now sought to be recov-
ered, and paid the purchase money, $1800, out of the aforesaid
money belonging to the lunatic, and took a conveyance to him-
self absolutely. On the 10th of January, 1838, the said Thomas
Reid, as such committee, made a report to the court of chancery,
in writing and under oath, in which he acknowledged the above
facts, and stated that Archibald Reid (son of the said Catherine)
was incapable of providing for himself and had no property of
his own, but that in case he should survive the said Catherine
Reid he would be entitled to such property as might belong to
her at the time of her death, unless she should recover from her
lunacy and dispose of her property by will.

Catherine Reid died in 1830, intestate, having continued a
lunatic till her death, and leaving the plaintiff one of her heirs
at law, he being entitled as such to one half of her estate, by
descent. She left also other heirs, not parties to this suit, to
whom the other moiety descended.

In July, 1841, Daniel Edwards, one of the defendants and brother-in-law of Thomas Reid, the committee of Catherine Reid, with full knowledge of the foregoing facts, took a mortgage from the said Thomas, covering the said land, to secure the payment of an old debt which the said Daniel had against the said Thomas, for about $850. This mortgage was foreclosed under the statute in 1847, and the premises were bid off by John Edwards, one of the defendants, and father-in-law of Thomas Reid the committee, with full knowledge of all the facts. The premises were worth at the time of the sale about $1800, or $2000, and were bid off for about $700. The defendant Noah Fitch was in possession as tenant of John Edwards at the time of the commencement of this suit. Before the commencement of the suit, possession was demanded of the undivided half of the premises for the plaintiff, which was refused, and John and Daniel Edwards were respectively required to release to the plaintiff their title to the premises, with covenants against their acts. This they refused to do.

It was admitted that Archibald Reid, the plaintiff, was a lunatic, and that Peter J. McKinlay was duly appointed his committee. It was proved that Thomas Reid, a short time before he was appointed committee, was discharged from his debts under the two-thirds act. John Edwards was one of his petitioning creditors, and Daniel Edwards was his assignee. There were other facts admitted by the pleadings or proved on the trial, not necessary to be stated in this place. The relief demanded by the complaint was the possession of an undivided half of the premises, and a quit-claim deed from the defendants, John and Daniel Edwards, with covenants against their acts, together with damages for the detention of the premises.

The defendants' counsel insisted, 1. That the plaintiff had not shown a legal title to the land in dispute. 2. That if a trust resulted on the purchase of the premises in question by Thomas Reid, with the pension money of Catherine Reid, it resulted in favor of Daniel Edwards, as a creditor of Thomas Reid, who it was to be presumed applied the moneys advanced to him by Edwards towards the support of Mrs. Reid. 3. That there was no

Reid *v.* Fitch.

resulting trust. 4. That if the plaintiff had any legal or equitable interest in the premises in question, the defendants were entitled to a reference, to have the account between Thomas Reid, as committee of Catherine Reid, and the plaintiff, taken and stated, to ascertain whether any thing was due to the plaintiff. And the defendants' counsel asked a reference for that purpose.

Mr. Justice Paige, before whom the cause was tried, decided that on the purchase of the premises in question by Thomas Reid in his own name, with the pension moneys belonging to Catherine Reid, a trust resulted in her favor, which trust, by the 45th section of the article of uses and trusts, was turned into a legal right, and that on the death of Catherine Reid the legal title descended to the plaintiff, Archibald Reid, and to the children of William Reid, as his heirs at law. And also, that if the defendants were entitled to have the account of Thomas Reid as committee of Catherine Reid taken and stated, and were entitled to any relief as against the premises in question, in case the estate of Catherine Reid should be found indebted to Thomas Reid, they must bring a separate action for that purpose, and file a complaint therein, in the nature of a bill in equity, and make all the persons interested in the estate of Catherine Reid parties to such action; that all the necessary parties to that suit were not parties to this action; and as there was no conflict as to the facts, and no question to submit to the jury, he directed a verdict for the plaintiff for the undivided moiety of the premises described in the complaint.

The defendants' counsel excepted to the foregoing decisions. The jury found a verdict for the plaintiff, and the defendants appealed from the judgment entered thereon.

*J. Wells*, for the appellants. I. The lunatic Catherine Reid did not take any right to the land; she took only a lien on the land. (2 *Story's Eq.* 4th ed. § 1195, *and note to* § 1210. *Atherley on Mar. Sett. ch.* 28, *pp.* 443, 444.)

II. If there be a trust it is merely by implication of law, and as such is not affected by the 45th section of the statute of uses

and trusts.   Hence Catherine Reid did not take a legal right in the land, as decided by the court.   The legal estate was in T. Reid, as trustee, and passed by the mortgage sale to John Edwards.  ·(2 *R. S.* 3*d ed.* 13, § 50.   14 *Wend.* 176.   1 *Yerg.* 1. 1 *Cruise, tit. Trust, ch.* 1, §§ 39, 47.   5 *Denio,* 225.   2 *R. S.* 134.   4 *Kent,* 309.   5 *John. Ch.* 1, 11.)   The report of T. Reid is not a declaration of trust.   Since the 2 R. S. 134, §§ 6, 7, it can have no effect, even if before it would have been sufficient as a declaration.   The cases cited on the other side were under the former statute.

III.   No action lies against the trustee, in favor of the heir. The land, having been bought with the trust funds, will be treated in equity the same as the money.   It will go to the personal representative and not the heir.   (1 *Cruise, tit.* 15, *Trust, ch.* 1, § 48.   *Id. tit.* 12, *ch.* 4, § 9.   2 *Story's Eq.* § 1259.   2 *John. Ch. Rep.* 1.   1 *Vernon,* 435, 100, 192.   2 *Kent's Com.* 230.   3 *Yerger,* 77.)   An administrator converted personal estate into land.   The next of kin was a minor and died under age.   His heirs claimed the land.   His administrators filed a bill against the heirs and the administrator of the father.   The court say, " The administrator has no power to convert personalty into realty, and if it be done, the real property will be considered in equity as personalty, and distributed accordingly." In 1st Vernon, 435, the facts were similar, and the court ordered the trustee to account to the administrator of the minor.   (2 *Vern.* 192.   2 *Kent,* 230.)   The above are cases where the trustees bought the land in good faith and expressly for the *cestui que trust.*   The same principles will hold more strongly in cases like the present, where the trustee bought the land for himself, in his own name, and in violation of his trust.   It can make no difference, according to the above cases, whether the trust is express or implied : in either case the land would go as personal estate to the administrator.   When a trustee misapplies the trust funds for his own benefit, the *cestui que trust* can call him to an account for such funds, and insist upon its repayment in money the same as of any other debt or claim, or she can if she elects so to do, have a decree for the land purchased with the

funds. She has no interest, equitable or otherwise, in the land till she elects to take it, and her right so to do is merely an equitable incident to her claim and demand against the trustee. (2 *Story's Eq.* § 1262, *note to* § 1210; 3 *How. Sup. C. Rep.* 1 *John. Ch.* 450, 581. 2 *Id.* 441, 444, 445.) Catherine Reid being a lunatic, could not make an election. The right to sue, or to call the trustee to an account for the trust moneys, passed to the personal representative. The land was but an incident to or a substitute for the money. From the lapse of time it is to be presumed that T. Reid had accounted with and paid up the trust funds to the administrator. There is nothing in the case showing otherwise. (2 *R. S.* 296, 301.)

IV. The trustee should be allowed his commissions, expenditures, &c. for the support of Catherine Reid, also of Archibald Reid, the plaintiff. Hence an accounting should be taken, to ascertain what such expenditures are.

V. No cause of action was made out as against D. Edwards. The complaint should have been dismissed as to him, with costs.

VI. Nor against Noah Fitch, who has taken a lease in good faith and without notice. (1 *Cruise, tit.* 12, *ch.* 4, §§ 10, 11.)

VII. The cause should have been left to the jury.

VIII. T. Reid did not receive the pension moneys as the committee of Catherine Reid, but as her agent, &c. under her power of attorney. Hence, so far as these funds are concerned, he is simply a debtor to Catherine Reid. The cases do not go the length of fastening a trust on the funds in the hands of an agent or attorney, or on the property which he may have bought with them. Two conditions must exist in cases like the present before equity will fasten a trust on the land. The first is, that the trustee should be in default and retain the trust funds, or part of them, and such funds have been converted into the land. If the committee has expended, in pursuance of his trust and for the support of the lunatic Catherine Reid and of the plaintiff, the full amount of what has been received by him, with the interest and profits thereof (as the defendants insist he has done) that is all that can justly be required of him. If an executor, committee, or other trustee has $1000 in his hands, and with

$500 of it he buys a farm for himself, but yet goes on with the trust and pays out the full amount of the $1000, with the interest and profits in accordance with the will or the requirements of his trust, surely equity will not take away the farm from him and give it to the *cestui que trust*, who has already had the full amount to which he is entitled. It can make no difference with what precise funds the trust is performed, provided it be substantially and in reality fulfilled. If, however, the trustee be in default for the funds, then the *cestui que trust* can elect to have the land in place of the funds, but not otherwise. Hence the committee, T. Reid, should have been made a party and called to an account, or at least it should have been shown that he was in default and kept back the trust funds. Nothing of the kind is shown, or even alledged. The fair presumption, from lapse of time and other circumstances, is that he has settled the account with the administrator. The judge erred in holding that Catherine Reid took the legal title to the land, and that such title descended as real estate to the plaintiff as heir, and that in order to have an account, the defendants must bring a separate action against the heirs &c. of Catherine Reid. That decision shut the defendants out from every possible defense.

The second condition is, that the trustee being in default and having converted the funds into land, the *cestui que trust* or the one entitled to the funds shall elect to take the land in place of the funds. (*See cases cited under the 3d point.*) Catherine Reid not having made and being unable to make an election, her right to call the committee to account, and compel him to pay over the funds, or else to take the land instead, passed to the administrator, the same as the money would have done had it not been converted into land. Even if the trust be considered as attaching to the land the instant of the purchase, or even if it be an express trust, still in equity it is personalty and goes to the personal representative, the same as the money would. The land is merely a substitute for, and incident to, the right to the funds, and passes with it to the administrator. (*See cases before cited.*) Hence the plaintiff has no rights as heir at law. It is only as next of kin, entitled to his distributive share on

settlement of the personal estate, that he is interested. As such, however, he can not maintain this action. He is but one of several next of kin. The right to the election can not go to him. The next of kin can only act on the estate through an administrator. The personal estate does not descend to the next of kin like the realty to the heir. It goes to the administrator, in whom the title vests, and who alone can bring actions on claims belonging to the estate of the intestate. The next of kin gets all his rights under the statute of distributions, and for them must look to the administrator, &c.

*F. McIntyre,* for the respondent. I. The deed to Thomas Reid in Dec. 1836, and the declaration of trust of Thomas Reid, vested the estate in Catherine Reid absolutely. And her title to an undivided half descends to the plaintiff. (1 *R. S.* 722, § 49, 2d ed. 1 *Cruise's Dig.* 421, *tit. Trust, ch,* 1, § 36, *n.* 115, *4th Am. ed. Burrett* v. *Joy,* 16 *Mass. Rep.* 221; *Fisher* v. *Fields,* 10 *John.* 505. 4 *Kent's Com.* 298. *Provost* v. *Gratz,* 1 *Peters,* 336. *Rutledge* v. *Smith,* 1 *McCord's Ch. Rep.* 119. 2 *P. Wms.* 414. 6 *Cowen,* 725.) If before the revised statutes this declaration of trust would have given Catherine Reid as *cestui que trust* a beneficial interest in the land, it would since the revised statutes give her a legal estate therein of the same quality and duration as her beneficial interest (1 *R. S.* 722, §§ 45, 47, 2d ed.)

II. If the estate did not vest absolutely in Catherine Reid by virtue of the declaration of trust, then on the purchase of the premises in question in his own name by Thomas Reid, with moneys belonging to her, a trust resulted to her. (1 *R. S.* 722, §§ 51, 52, 53, 2d ed. 1 *Cruise,* 422, *tit. Trust, ch.* 1, § 47.)

III. This resulting trust under the revised statutes is a legal right cognizable as such in the courts of law of this state. And the cestui que trust was entitled to the possession of the land and the receipt of the rents and profits thereof. 1 *R. S.* 721, §§ 45, 47, 2d ed. *Wait* v. *Day,* 4 *Denio,* 439. 3 *John.* 216. 10 *Id.* 199. 11 *Id.* 97. 2 *Wend.* 134. 7 *Id.* 379. *White* v. *Carpenter,* 2 *Paige,* 238. 1 *R. L.* 72, § 1.)

IV. If however the court shall be of opinion that this is a resulting trust, and that prior to the code the plaintiff's right could be enforced only in a court of equity, then the decision of the judge, so far as it was in favor of the plaintiff, was right, although the reason given may have been wrong. The case made by the complaint and the proof would in equity have entitled the plaintiff to a decree against the defendant for possession of and a conveyance of the land. The judge directed judgment in favor of the plaintiff for possession of the land, but did not order the defendants to convey. His decision thus far was such as would have been made by a court of equity, and the plaintiff alone could complain that the defendants were not also ordered to convey. (*Pebbles* v. *Reading*, 3 *Serg. & R.* 484.)

V. The right of Catherine Reid descended to her heirs at law, and the plaintiff as one of such heirs became entitled to possession of one half the land.

VI. The defendant showed no right to have the account of Thomas Reid with the estate of the lunatic taken and stated in this suit. Even if Catherine Reid's estate is indebted to Thomas Reid, he has not assigned his claim to the defendants or either of them. The mortgage to secure his individual debt only conveyed his interest in the land to Edwards. It does not give Edwards any right against Reid or his property. It does not appear that there is any covenant on the part of Reid to pay Edwards, or any bond accompanying the mortgage.

VII. If the defendants wish to reach this land, they must first get a judgment against Thomas Reid : if the execution be returned unsatisfied they may then compel him to make an assignment to a receiver. If it then turns out that he has a claim against the estate of the lunatic, his receiver must proceed against the administrator of the deceased, or against her heirs. In no other way can Edwards obtain an interest in the plaintiff's share of this land.

*By the Court,* WILLARD, P. J. At the time the revised statutes were adopted, it was well settled that where land was purchased in the name of one person and the consideration was

Reid *v.* Fitch.

advanced by another, a trust resulted in favor of the person who advanced the consideration. (*Jackson* v. *Morse,* 16 *John.* 197. *Foote* v. *Colvin,* 3 *Id.* 216. *Jackson* v. *Sternbergh,* 1 *John. Cas.* 153. *Botsford* v. *Burr,* 2 *John. Ch.* 409. 3 *Story's Eq.* § 1201. *Cruise's Dig. tit.* 12, *ch.* 1, § 42, *of Trusts.*) For reasons unnecessary to be mentioned here, this rule was abrogated, except in favor of the creditors of the party advancing the consideration, to the extent that might be necessary to satisfy their demands. (1 *R. S.* 728, §§ 51, 52.) And except by the 53d section, " when the alienee named in the conveyance, shall have taken the same as an absolute conveyance, in his own name, *without the consent or knowledge of the person paying the consideration,* or *when such alienee, in violation of some trust, shall have purchased the lands so conveyed, with moneys belonging to another person.*" The latter clause in terms covers the present case. Thomas Reid, the alienee, made the purchase and took the deed to himself, in violation of his trust, and he paid the consideration with money belonging to the lunatic, Catherine Reid. This resulting trust in favor of the lunatic is expressly retained by the revised statutes. The cases before cited show that such resulting trust might be proved by parol. But in the present case, it was not necessary to rely upon that principle. The report afterwards made by him to the court of chancery, in writing, and subscribed by him and verified by his oath, distinctly recognized and declared the trust. Such declaration is equally efficacious, as if made at the time. (*Per Sutherland, J. in Jackson* v. *Moore,* 6 *Cowen,* 725, 6. 5 *John. Ch.* 12.) The 45th section of the same article, (1 *R. S.* 727,) abolished uses and trusts, except as authorized and modified therein; and enacted that every estate and interest in lands shall be deemed a legal right cognizable as such in the courts of law, except when otherwise provided in that chapter. The learned judge was right in holding that on the purchase of the premises in question by Thomas Reid in his own name with the moneys belonging to Catherine Reid, a trust resulted in her favor which the statute turned into a legal estate, and that on her death it descended to her heirs at law.

---

Reid *v.* Fitch

---

I am aware that the chancellor intimated in *Brewster* v. *Power*, (10 *Paige*, 562,) that the land in which there is a resulting trust in favor of creditors can not be sold on an execution in favor of the creditors. But the case did not call for a decision of the question; and the contrary was expressly held by the supreme court in *Wait* v. *Wait*, (4 *Denio*, 439.) If the estate be a legal estate, by operation of the statute, it is subject to all the incidents of such estate. Before the revised statutes, such estate could be sold on execution against the *cestui que trust*. (*Foote* v. *Colvin*, 3 *John*. 216.) If it was a legal estate for that purpose, it must have a descendible quality, and must be recognized as a legal estate in a court of law.

The defendants are not protected by the 54th section, for they purchased with full notice of the trust, and without parting with any new consideration.

The learned judge did not decide that an equitable defense could be made to a legal demand, and that question does not properly arise in this case. It is manifest that the proper parties are not before the court to take an account between the heirs of Catherine Reid the lunatic and Thomas Reid the committee. The defendants did not ask leave to amend the pleadings in this action, nor that the case should stand over to add parties. It is therefore unnecessary to say whether the pleadings in this cause could have been so moulded as to take the desired account. Nor was there any question on which the defendant asked to go to the jury; nor was the judge asked to dismiss the action as to one or more of the defendants. The intimation that an account should be taken in a cross-action, in which all persons interested should be made parties, was a proper suggestion, and is hardly the subject of an exception.

On the whole I am satisfied that the cause was properly disposed of at the circuit.

Judgment affirmed.

[Essex General Term, July 7, 1851. *Willard, Hand* and *Cady,* Justices].