LUCINDA SAFFORD, administratrix, &c. *vs.* PETER HYNDS.

THE SAME *vs.* THE SAME.

HYNDS *vs.* SAFFORD.

ALEXANDER CROUNSE *vs.* PETER HYNDS.

Land was purchased, at a foreclosure sale, by H. as the agent of and for the benefit of C., with money furnished mostly by C. and in part lent him by H. The title was taken in H.'s name, without the consent of C. *Held* that the title was to be regarded as taken and held by H. for the benefit of C.; and that, upon a bill in equity being filed for that purpose, by C. a reconveyance by H. would be ordered.

And that a tender of the money advanced by H. for C. was not necessary to enable C. to maintain an action to compel a reconveyance of the property.

*Held also*, that C. being the real owner of the property, under an equitable title, and S. being in possession rightfully, by the consent and authority of C., he had such a right to the possession as entitled him to maintain an action of trespass, against H. and to recover for any damages done to his possession by the latter.

An agent, appointed to attend a foreclosure sale and bid off the property for the benefit of his employer, has no right to purchase the same in his own name. When an agent thus exceeds his authority, the purchase will be held to be made for the benefit of his principal, at the election of the latter; even though the agent takes the title in his own name.

Although it is sufficient, *prima facie*, for the plaintiff, in ejectment, to show a right of possession in himself, under a forecloseure sale, yet if the defendant can show an equitable right to the possession in a third person, under whom he claims, this evidence will be legitimate and proper, and will constitute a complete equitable defense to the action.

The provision of the statute, declaring that where a grant for a valuable consideration is made by one person and the consideration paid by another, the title shall vest absolutely in the alienee, does not apply to a case where the deed is taken in the name of one acting merely as agent, with the consent of the person paying the consideration.

APPEALS from judgments rendered upon decisions of the judge at the circuit. These actions were all tried together, at the Schoharie circuit, by consent, before Justice HOGEBOOM, without a jury. They all related to the title to a lot of land in Seward, Schoharie county.

The first two actions were commenced in a justice's court, for trespass on the lot, and title having been pleaded, they were continued in the supreme court. The third was eject-

ment for said land, in which an equitable title was interposed as a defense; the defendant justifying under Alexander Crounse, the plaintiff. The fourth case was an equitable action to compel the defendant Hynds to give a deed of said lot to the plaintiff.

In April, 1853, Lucinda Safford the wife of ——— Safford deceased, being the owner of an acre of the premises in question, executed a mortgage upon it, for $125, to Henry Snyder. This mortgage, by assignment, came to the hands of Philip P. Hilton, who commenced proceedings to foreclose it by adverisement under the statute—the sale under the notice of foreclosure was to take place at Hyndsville, Schoharie county, April 10, 1858. John Crounse jr. was the agent for and on behalf of his brother Alexander Crounse, which Hynds knew. Alexander held a debt against Safford of about $60, for leather and other things. Mrs. Safford was desirous that Crounse should bid in the property at the mortgage sale. Crounse got Hynds to bid it off for him, Crounse, in behalf of Alexander. Accordingly, on the day of the sale, and a short time before it took place, Hynds agreed with John to attend at the sale and bid off the property for his brother Alexander. John had raised $110 of money belonging to his brother, which he furnished to Hynds towards paying for the bid, and Hynds agreed to lend the balance of the amount that might be necessary to pay the bid. Hynds and John attended the sale and Hynds bid the property in, for $135. There was a surplus of about $10 coming to Mrs. Safford, and John went over to her house with her husband and got her receipt for it and paid it to Hilton. Hynds, without the consent of Crounse, had the affidavits of sale made out in his own name and they were recorded. On the 14th of May, 1860, Hynds demanded possession of the lot, of Lucinda Safford and her husband, and gave them notice to quit. On the 14th of May, and also on the 16th of May, he entered upon the lot by force and against their will, with his men and teams, ploughing and taking away the manure

and cutting down the fruit trees. Two of the suits were brought for these alleged trespasses. Afterwards, and on July 19, 1859, Alexander Crounse caused a tender to be made to Hynds of $31 in gold and silver, which was brought into court, and demanded the execution of a quit-claim deed, which he refused to give.

On the 22d of August of the same year Hynds commenced an ejectment suit against Safford. Safford died pending the proceedings and his wife was appointed administratrix. Immediately after the sale, Safford made an agreement with Crounse to remain in possession as the agent for Crounse. The principal question of fact litigated on the trial was, whether Hynds bid the property off as the agent for Crounse. The judge decided against him on the question of fact, giving the plaintiff $5 damages in the two trespass suits, and costs; and in the ejectment suit dismissed the complaint with costs, and adjudged in the equity suit that Hynds convey the property to Crounse, and pay costs of the action. Judgments were entered for the costs, and Hynds appealed.

*H. Smith,* for the apellant,

*L. Tremain,* for the respondents.

*By the Court,* MILLER J. I. I think that the judge on the trial properly decided that Safford was rightfully in possession of the premises and could maintain trespass. Safford claimed possession under Crounse, who had an equitable title to the property. According to the judge's decision (which I think there is sufficient evidence to sustain) the purchase at the foreclosure sale was made by Hynds as the agent of and for the benefit of Crounse, with money furnished mostly by Crounse and in part borrowed of Hynds. The title was taken in Hynds' name without the consent of Crounse who was the real purchaser through his agent Hynds. It was not the fault of Crounse that the title was not in him,

and it was contrary to the intention of the parties that the papers were made out in Hynds' name. The title to property, taken nnder the circumstances proved and found by the judge in this case, would be regarded as taken and held for the benefit of Crounse, and upon a bill being filed a reconveyance, would be ordered. (1 *R. S.* 728, § 53. *Lounsbury* v. *Purdy,* 11 *Barb.* 490. 16 *id.* 382. 18 *N. Y. Rep.* 448. *White* v. *Carpenter,* 2 *Paige,* 238. *Reid* v. *Fitch and others,* 11 *Barb.* 399. 18 *N. Y. Rep.* 448.)

A tender of the money advanced by Hynds for Crounse was not necessary to maintain the action to compel a reconveyance of the property. According to the judge the money paid by Hynds, besides what was furnished by Crounse, was borrowed by Crounse. Hynds would therefore have a right of action to recover it back, but no formal tender to Hynds or demand of performance was required. Crounse being the real owner under an equitable title, and Safford being in possession rightfully by the consent and authority of Crounse, he had such a right to the possession as entitled him to maintain the action and to recover for any damages sustained to his possession. Hynds had no right to the possession and no legal title, and hence was liable as a trespasser.

II. There was no error in allowing Safford to show an equitable title in Crounse. Nor do I think that the trespass suits were commenced before a right of action to establish an equitable title had accrued. The point that a tender and demand of performance was necessary prior to a right of action, I have already discussed and disposed of. It appears to be quite clear that Hynds had no right to purchase the property in his own name, and when an agent thus exceeds his authority the purchase will be held to be made for the benefit of the principal, at his election, even althongh the agent takes title in his own name. (*Moore* v. *Moore,* 1 *Seld.* 256.)

So far as the equity case is concerned, it appears that the money paid by Hynds besides what was furnished by Crounse,

Safford *v.* Hynds.

and a sufficient amount to cover all that Hynds could justly claim, was actually tendered and brought into court.

III. The evidence showing an equitable title in Crounse was admissible. It was no doubt sufficient *prima facie* for Hynds to show a right of possession under a foreclosure sale. (*Lawrence* v. *Williams,* 1 *Duer,* 585.) Conceding this to be so, it was still proper for Safford to show an equitable right to the possession of the premises in Crounse, under whom he claimed. The same facts which would entitle Crounse to maintain an equitable action to compel Hynds to execute a conveyance to him, would be an equitable defense to Safford, as the tenant of Crounse. (*Code,* § 150. *Thurman* v. *Anderson,* 30 *Barb.* 621.) Safford was in possession of the premises claiming title under Crounse. He did not propose strictly to show title in a third person, but to prove a right of possession through another person under whom he claimed. This would constitute a complete equitable defense to Hynds' claim, and was legitimate and proper. It was not an attack on Hynds' title collaterally, but proof of a right of possession in himself under Crounse.

IV. I am also of the opinion that no error was committed by the judge in deciding that the real purchaser of the premises was Alexander Crounse, and that he was entitled to a deed. The evidence warranted such a conclusion, and I do not think that Hynds was in such a position as to avail himself of that provision of the statute which declares that when a grant for a valuable consideration is made to one person and the consideration paid by another, the title vests absolutely in the alienee. (1 *R. S.* 728, 1*st ed.* § 51.) The section relied upon only applies when the conveyance is taken in the name of another person with the consent and knowledge of the person paying the consideration, and is expresly qualified by section 53 of the same act. The deed being taken in the name of Hynds, the purchaser, without the consent of Crounse, Hynds was not within the prohibition

of section 51. (*Hosford* v. *Merwin*, 5 *Barb.* 51, 56, 57. *Norton* v. *Stone*, 8 *Paige*, 222. *See also authorities before cited.*)

It follows that the judgments must be affirmed and a new trial denied, with costs.

[ALBANY GENERAL TERM, December 1, 1862. *Hogeboom*, *Peckham* and *Miller*, Justices.]