THE BUFFALO, NEW YORK AND ERIE RAILROAD COMPANY *vs.* MILES P. LAMPSON and wife.

C. having been appointed the commissioner of construction, by the Buffalo, Corning and N. Y. Railroad Co. with power to negotiate for the right of way, and for all lands required for the use of the company, entered into written contracts with the owners of five several parcels of land, for the purchase thereof by the company. He subssquently paid the purchase money, to the several owners, out of funds furnished by the company, but instead of taking conveyances of the land to the company, he, without the knowledge or consent of the railroad company, took deeds from such owners, conveying the several parcels to L., a director of the company, which deeds he subsequently handed to L. L. took no part in the negotiations for the purchase of the lands, and was never in possession of such lands; nor did he know that he was the grantee in the deeds, until a considerable time after their execution and delivery. L. having refused to convey the lands to the plaintiff, (the successor to the rights of the Buffalo, Corning and N. Y. Railroad Co.,) this action was brought to compel such conveyance.

*Held* 1. That the effect of the several conveyances. to L. was to create a valid trust in favor of the Buffalo, Corning and N. Y. Railroad Co., resulting by implication of law, in relation to the lands described in those deeds.

2. That by the common law, and until the Revised Statutes took effect, such a trust would result, simply from the fact that the entire consideration or purchase money of each deed was paid by the railroad company.

3. That the case came within the provisions of section 53 of article 2 of title 2 chapter 1 of part 2 of the Revised Statutes, (1 *N. Y. Stat. at Large,* 677.)

4. That in taking the conveyances to L. without the knowledge or consent of the railroad company, C. acted without authority.

5. That L., being a director of the company, was guilty of a fraud upon it in receiving the conveyances in his own name and refusing to convey the lands to the company's grantees and successors, under these circumstances.

6. That by the 50th section of the above statute, the common law rule in relation to resulting trusts must determine the nature and effect of the estate or interest of the railroad company in the lands at the time of, and upon, the conveyances thereof to L.

7. That the railroad company, upon the execution of the five deeds to L., became seised of a legal estate in fee in the lands described in those deeds, which became, *eo instanti,* upon the execution of such deeds, subject to the lien and operation of a mortgage executed by such company, upon its railroad, right of way, real estate, franchises, &c. to trustees, in trust for the benefit of bond holders.

8. That the conveyances to L. having been recorded, they were a cloud upon the plaintiff's title, which the plaintiff had a right to have removed; and that this could be best done by a conveyance from L. and wife to the plaintiff, which was accordingly decreed, the conveyance to contain a covenant by L. against his own acts.

APPEAL from a judgment entered upon the report of a referee. The action was brought for the purpose of having certain conveyances of real estate, made to the defendant Miles P. Lampson, declared to have been given in trust for the Buffalo, Corning and New York Railroad Company, to whose rights the plaintiff had succeeded; and of compelling a conveyance of the same to the plaintiff. The referee reported in favor of the plaintiff, and that the plaintiff was entitled to judgment requiring the defendant to convey to it the premises described in the complaint, with the exception of a parcel specified in the report, which had been conveyed by the defendants to the Rochester and Genesee Valley Railroad Company. Judgment being entered upon the report, the defendants appealed to the general term. The material facts are detailed in the opinion of the court.

*E. G. Lapham,* for the appellants.

*A. P. Lanning,* for the respondent.

*By the Court,* WELLES, J.   This action is brought to compel the defendants to convey to the plaintiffs certain real estate described in the complaint.   The premises in question consist of five small parcels of land now in part covered by the tracks and structures of the plaintiffs and those of the Rochester and Genesee Valley Railroad Companies, in the village of Avon.   Constant Cook was appointed commissioner of construction by the Buffalo, Corning and New York Railroad Company by a resolution of its board of directors, at a meeting of such board, on the 13th day of August, 1850.   By one of the by-laws of the company, adopted January 7th, 1851, it was declrared to be " the duty of the commissioner of construction to make negotiations for the right of way and all lands required for the use of the company, and to transmit to the president the result of such negotiation, with all the facts relating to the value and importance, to the company, of each piece of land, together with the facts connected with the negotiations therefor."   In the months of September and October, 1852, the said Constant Cook negotiated with three of the persons, Ira Dickinson, Jesse Van Zandt and Patrick Lyon, each owning one of the said five parcels of land, for said three parcels respectively, and procured contracts in writing from them by which they respectively granted, bargained and sold to the Buffalo, Corning and New York·Railroad Company, and their successors, the parcels so by them sold respectively, for the amount of the purchase money to be paid to them respectively, on the first day of April next thereafter, or at any time prior thereto, whenever such persons should respectively convey such parcels to said railroad company ; and by which each of said vendors agreed that said company should have immediate possession of the premises so sold by him, or such part thereof as should be necessary and convenient for surveying and constructing their said road ; and agreeing to give sufficient warranty deeds for said respective parcels to said company upon payment of the considerations therefor respectively.

On the 5th day of February, 1863, the said Constant Cook,

in pursuance of said contracts, obtained deeds from the said Dickinson, Van Zandt and Lyon and their wives respectively, to the defendant, Miles P. Lampson, for the parcels of land by them sold to the Buffalo, Corning and New York Railroad Company as aforesaid, and on the same day a deed from Nathaniel Moulton and wife, the owner of one other of the said five parcels, by which last mentioned deed the said last mentioned parcel was conveyed to the said defendant, Miles P. Lampson, and subsequently two equal undivided third parts of the remaining parcel of said premises were conveyed by Wm. C. Hawley, as special guardian of Benton H. Hickox and Amelia C. Hickox, infants, &c. appointed by the county court of Livingston county, in proceedings in that court for the sale of real estate of said infants, and in pursuance of an order made in those proceedings by said county court, by deed bearing date January 1st, 1854, to the defendant, Miles P. Lampson. I have been unable to discover from the case, that either Lampson or the Buffalo, Corning and New York Railroad Company have ever acquired the title to the remaining undivided one third of the premises described in the last mentioned deed. This, however, is unimportant for the purpose of a decision of the cause.

The evidence clearly establishes that the consideration moneys for each of said five parcels, amounting together to $3892.70, was paid to the several grantors thereof, by Cook as agent, and with the funds of the Buffalo, Corning and New York Railroad Company, and that such funds were furnished him by and for the use and benefit of that company; and there is no evidence in the case tending to show that he had any authority from the company to take the titles, or either of them, in the name of Lampson, except the title conveyed by the deed from Wm. C. Hawley, as special guardian, &c. bearing date January 1st, 1854, and as to that, all the evidence of such authority is contained in a resolution of the board of directors of the last mentioned company, held June 16th, 1853, in the following words: "On

motion of Mr. Lampson, resolved, that the commissioner be instructed to furnish the treasurer of the company with a list of all the lands which he has purchased for the company the title of which has been taken in the name of individuals, instead of the company, and that hereafter all lands purchased for the said company shall either be conveyed directly to the company or to M. P. Lampson, and that he the said M. P. Lampson shall furnish the secretary of the company from time to time with a list of said lands." It is also established by the evidence that the defendant, Miles P. Lampson, was never in possession, in his own right, or otherwise, of the premises in question, or any part thereof, and that from the times of the several conveyances by the grantors thereof to him until the commencement of the present action, the same have been in the exclusive possession of the Buffalo, Corning and New York Railroad Company, their successors and assigns. It nowhere appears that Lampson took any part in the negotiation with the five several grantors for the purchase of the lands described in their several deeds, or with either of them, nor that he had possession of said deeds or either of them, or knew that he was the grantee in either of them, until a considerable time after they were executed and delivered to Cook, who negotiated the purchases, or that he was ever consulted in relation to whom the lands were to be conveyed.

Cook testified, on the trial before the referee, that these lands were conveyed to Lampson for the reason that it was proposed to convey a part of the lands to the Genesee Valley Railroad Company, and the road of the Buffalo, Corning and New York Railroad Company being mortgaged, " we wanted to prevent this land from coming under the mortgage." William F. Miller testified that Lampson told him that the company paid for these lands. That Mr. Cook brought the deeds to him, and told him they might be of use to him some day, and handed them to him. That Lampson said he had kept the title because he thought the thing would come out all right some time.

On the 12th day of April, 1854, M. P. Lampson and wife, by quit-claim deed of that date, conveyed to the Rochester and Genesee Valley Railroad. Company the western portion of the five parcels of land conveyed to him by the five several grantors above. The eastern boundary of the premises so conveyed by said Lampson and wife being a line drawn equidistant between the center lines of the principal tracks of the Buffalo, Corning and New York Railroad and the Rochester and Genesee Valley Railroad as then located and constructed, excepting and reserving therefrom so much of said land as is occupied and covered by buildings erected at the joint expense of said companies. which portions of said land, with the appurtenances, should be held and enjoyed in common by said two companies in perpetuity, reference being had to certain agreements between said companies bearing even date therewith.

On the first day of April, 1852, the Buffalo, Corning and New York Railroad Company executed and delivered a mortgage of that date to John A. Stevens, James S. T. Stranahan, and John A. C. Gray, reciting among other things the due organization and incorporation of the mortgagors under the general railroad act of 1850, and that for the purpose of completing the construction of its railroad, then in process of construction, (stating its commencement, terminus and several intermediate points through which it should pass,) it was necessary for the corporation to borrow the sum of $1,000,000 for the completing and furnishing of said railroad ; that the said mortgagors, in order to secure the said one million of dollars, had executed bonds to that amount, eight hundred in sums of $1000 each, and four hundred in sums of $500 each, payable to said Stevens, Stranahan and Gray, or the holders of the bonds respectively, and that the said company had determined to borrow said sum of one million of dollars, and to issue said bonds.

The mortgage was given to said Stevens, Stranahan and Gray in trust to secure the payment of the bonds, and for

that purpose conveyed "all and singular the said railroad of the said parties of the first part, as well that part of the said railroad now constructed as the part thereof which may or shall be hereafter constructed, together with the right of way for said road, land, rails, bridges, buildings, erections, structures, fixtures and appurtenances thereunto belonging, and all the franchises and rights whatsoever now owned by or belonging to the said corporation, or that may be owned by or belong to them hereafter, together with all the locomotives, tenders, cars, carriages, tools and machinery, now owned or hereafter to be owned by said corporation, or in any way belonging or appertaining to said road and used thereon." This mortgage was duly recorded in the office of the clerk of Livingston county, on the 14th of April, 1852. The bonds to secure the payment of which it was made were afterwards issued, and default having been made in their payment, the mortgage was foreclosed by action in this court, and judgment of foreclosure was entered on the 16th day of September, 1856. In that action the three mortgagees, Stevens, Stranahan and Gray, together with Thomas T. Buckley, a bond holder, were plaintiffs, and the mortgagors, The Buffalo, Corning and New York Railroad Company, together with twenty-three other persons and corporations, including Miles P. Lampson, were defendants. In that action of foreclosure the defendant Miles P. Lampson was a party defendant, both individually and as trustee for second mortgage bond holders, as stated in the complaint therein as follows : "That there appears upon record in the several clerks' offices aforesaid another indenture of mortgage upon the aforesaid property of said railroad, bearing date on the 20th of May, 1853, between the said The Buffalo, Corning and New York Railroad Company of the first part, and Daniel S. Miller and Miles P. Lampson of the second part, purporting to have been executed to secure the payment of $600,000 to be procured on the issue of bonds similar to those hereinbefore mentioned, but which bonds and mortgage last mentioned are

subject and subordinate to the mortgage hereinbefore set forth. And the said Daniel S. Miller and Miles P. Lampson are made defendants in this action both individually and as trustees for the bond holders mentioned in the mortgage made to them, for the purpose of foreclosing any and all interest or right of equity of redemption of said Miller and Lampson as trustees aforesaid, or otherwise, and of the said last named bond holders, and of debarring them from all claim in the premises and property described in the said first mentioned mortgage, as against the claim of the plaintiffs upon and by virtue of the said prior mortgage hereinbefore set forth." Several of the defendants appeared in the action and put in their answers, among whom was the said Miles P. Lampson.

The judgment in said foreclosure action, after reciting the facts, declared and provided among other things, as follows : "that all and singular the mortgaged premises, franchise and property mentioned in the complaint in this action, and in the mortgage aforesaid, and herein described or referred to, and which was mortgaged to the plaintiffs, John A. Stevens, James S. T. Stranahan and John A. C. Gray, by the aforesaid mortgage, dated on the first day of April, 1852, be sold at public auction, by or under the direction of Charles G. Miller, Esquire, of the city of Buffalo, the receiver in this action, in whose possession and custody the same now are, and who is hereby appointed a referee for such purpose ; and that the said mortgaged franchise, together with so much of said mortgaged premises as consist of rail tracks, lands, tenements, fixtures and real property, including depots and machine shops, with all machinery, stationary engines, tools, implements and tracks pertaining thereto, be first sold, and sold in one parcel, and at the same place in the county of Steuben, after public notice of the time and place of such sale," &c.

The judgment further adjudged and decreed as follows : " And it is further adjudged and decreed that the defendants in this action, and each and every of them, and all persons

claiming from or under them, or any or either of them, be, and they are hereby forever barred and foreclosed of and from all equity of redemption and claims of, in and to the said mortgaged franchise, premises and property, and every part and parcel thereof," &c.

The judgment also contained a description of the real estate and other property therein authorized to be sold by virtue thereof, as folows : " The description of the real estate and other property authorized to be sold under and by virtue of this judgment, as far as can be ascertained from the mortgage aforesaid, executed to the plaintiffs, Stevens, Stranahan and Gray, dated on the first day of April, 1852, or from the complaint in this action, is as follows, viz : All and singular the railroad of the said Buffalo, Corning and New York Railroad Company, extending from the city of Buffalo, in the county of Erie, through Batavia and LeRoy, in the county of Genesee, Avon and Conesus, in the county of Livingston, and Conhocton and Bath in the county of Steuben, to the New York and Erie Railroad, near the village of Painted Post, in the county of Steuben, as well that part of the railroad already constructed as the part unconstructed, together with the right of way of said road, lands, rails, bridges, buildings, erections, structures, fixtures, and appurtenances thereunto belonging, including all lands adjacent to said track, and all interests in lands acquired for the purposes of said railroad corporation, and all the franchises and rights whatsoever owned by, or belonging to said railroad corporation at the date of said mortgage or at any time since ; together with all the locomotives, tenders, cars, carriages, tools and machinery owned by said railroad corporation at the date of said mortgage or since, or now owned by said corporation, or in any way belonging or appertaining to said road, and used thereon ; and also all right, benefit and equity of redemption of said railroad corporation, in or to, or pertaining to the said premises, estate, franchises and property, and any part thereof, together with the appur-

tenances and hereditaments thereto belonging or appertaining. The following described lands, and all interest of said railroad company therein, are to be included in said sale, as appurtenant to said franchise and road, and it having been intended by said mortgage that the same should be covered thereby, to wit : " (Here follows a description of certain real estate, situated in the town of Corning, conveyed to the Buffalo, Corning and New York Railroad Co. by Erastus Corning and Joseph Fellows, by deed, bearing date, June 1st, 1853.) " Also the following described lands, appurtenant to said road, and belonging to said railroad corporation, to wit : A piece of land in the village of Avon, Livingston county, on which the company's depot and wood sheds stand, bounded on the south by the Buffalo and Albany road, so called, on the east by the highway leading to Rochester, and on the west by land of W. W. Wadsworth and the Rochester and Genesee Valley Railroad Company, and on the north by lands deeded by Lampson to the Rochester and Genesee Valley Railroad Company ; said lands were purchased by (of ?) Patrick Lyon, Nathaniel Moulton, Jesse Van Zandt and Ira Dickinson."

In pursuance of the foregoing judgment, and the directions therein contained, the premises in question were sold by Charles G. Miller, the referee, at public auction, to John A. Stevens, and John A. C. Gray, as trustees for, and on behalf of the first mortgage bond holders, they being the highest bidders for the same, and the said Charles G. Miller, by deed bearing date the 28th day of October, 1857, in pursuance of said sale, duly conveyed all of the premises in question to John A. Stevens and John A. C. Gray as such trustees, who, afterwards, by deed bearing date October 29th, 1857, duly conveyed the said premises to the plaintiffs in the present action.

On the 12th day of April, 1854, a contract in writing was entered into, dated on that day, between the Buffalo, Corning and New York Railroad Company of the first part, and the Rochester and Genesee Valley Railroad of the second

part, under their respective corporate seals, by which, among other things, the parties thereto covenanted to and with each other, to construct jointly a good, commodious, and substantial passenger house, water fixtures, &c. at some point or points between the two main tracks of said parties, as might be convenient for the use of both parties, and provide a supply of water, and to construct a turn table, &c. the expenses of such structures to be borne by the parties in equal proportions, and, when constructed, to be held, used and occupied, owned, enjoyed and maintained by the said parties, respectively, as tenants in common, share and share alike, in perpetuity. The terms of this agreement had been, at a previous meeting of the board of directors, held on the 6th of April, 1854, reported by Lampson as a committee appointed for that purpose, and a resolution adopted, authorizing him to perfect the agreement, which was accordingly done, as before stated.

These structures, it should be recollected, at the time the agreement was entered into, were most likely to be erected on the premises of both the contracting parties, those of the Buffalo, Corning and New York Railroad Co. being a portion of the premises in question.

In or about the month of September, 1862, the Buffalo, New York and Erie Railroad Company caused a deed to be prepared and presented to the defendant, M. P. Lampson, to be executed by him and the defendant his wife, and demanded the due execution thereof by him and his wife. This deed, if executed, would convey to the plaintiffs, the railroad company last mentioned, the premises conveyed to said Lampson by the said Dickinson, Van Zandt, Lyon and Moulton, and their wives, by deeds bearing date February 5th, 1853, and by William C. Hawley, special guardian, by deed dated January 1st, 1854, as before stated, excepting therefrom so much of said premises as had been conveyed by said Lampson and wife to the Rochester and Genesee Railroad Company, by deed dated April 12th, 1854, as before mentioned, which deed, so prepared for execution by said Lampson and

wife, contained a covenant by said M. P. Lampson against his own acts. Lampson declined to execute the deed thus prepared and tendered to him.

There are some other facts bearing on the questions to be considered in the case, which will be hereafter alluded to.

The referee reported in favor of the plaintiffs, stating his conclusions of fact ; and as a conclusion of law, that the plaintiffs were entitled to judgment requiring the defendants to convey to the plaintiff the premises described in the complaint, with the exception of the part thereof conveyed by the defendants to the Rochester and Genesee Valley Railroad Company as aforesaid, by a proper deed of conveyance duly acknowledged, so as to entitle it to be recorded, with a covenant by said Miles P. Lampson against his own acts ; such deed to be prepared and acknowledged at the expense of the plaintiffs, and to be executed and acknowledged within five days from the time it should be presented to the defendants. for execution, ready for delivery to the plaintiffs. Judgment was entered upon this report, from which judgment this appeal was taken.

In view of the facts established, it seems to me that the effect of the five several deeds to Lampson from Dickinson, Moulton, Van Zandt, and Lyon, dated February 5th, 1853, and from Hawley, dated January 1st, 1854, was to create a valid trust in favor of the Buffalo, Corning and New York Railroad Company, resulting by implication of law, in relation to the lands described in those deeds, a portion of which lands is the subject matter in controversy.

There can be no doubt that by the common law, and until the Revised Statutes took effect, such a trust would result, simply from the fact that the entire consideration or purchase money of each deed was paid by the railroad company. (1 *Crui. Dig. tit.* 12, *ch.* 1, §§ 39–42, *pp.* 421, 422, *4th Am. ed.*) But the Revised Statutes have made important changes in the law of uses and trusts.

Section 51 of article 2 of title 2, chapter 1 of part 2,

(1 *Stat. at Large*, 677,) declares that "when a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be° paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section." The next or 52d section contains a reservation in favor of creditors of the person paying the consideration; and the 53d section contains a further qualification of section 51, as follows : "The provisions of the preceding fifty-first section shall not extend to cases where the alienee named in the conveyance shall have taken the same as an absolute conveyance in his own name, without the consent or knowledge of the person paying the consideration, or where such alienee, in violation of some trust, shall have purchased the lands so conveyed with moneys belonging to another person." The present case, I think, comes within the provisions of this 53d section. 1st. The conveyances referred to were taken by Lampson in his own name, and were absolute in their terms. 2d. They were taken for, and the considerations paid were furnished by, the Buffalo, Corning and New York Railroad Company, and for the uses and purposes of their road. 3d. They were taken in the name of Lampson as alienee without the knowledge or consent of the railroad company that they were, or were to be so taken. The negotiations for the purchase of these lands were made by Cook as a committee of construction, by virtue of one of the by-laws of the railroad company, which made it his duty to make negotiations for the right of way and all lands required for the use of the company, and to transmit to the president of the company the result of such negotiations, &c. as before recited. But so far as the case shows, he had no right or power to consummate such negotiations by taking the titles. It was obviously the intent and meaning of the by-laws, that the final action upon the negotiations, by the committee of construction, should be reserved to the cor-

poration by its directors at a regular meeting thereof. It does not appear that the negotiations in question were ever reported by Cook, or that any action was ever had on the subject, by such board, and in the absence of any evidence on the subject, we are to intend that no such report was made, and no action had by the board of directors.

They were affirmative facts, quite important to the defense, and which the defendants were bound to establish if they existed.

In taking the conveyances to Lampson without the knowledge or consent of the railroad company, Cook acted without authority ; and indeed, by taking them at all without having reported the negotiations as required by the by-laws, and without having further instructions from the board of directors, he was equally without authority. There was no evidence that notice was ever communicated to the board of directors of the form of the conveyances, or that they were absolute in their terms, or that Lampson was made the alienee therein ; nor that any member of the board, except Cook, had any such notice or knowledge. Lampson himself had no such knowledge or that Cook contemplated or intended to take the conveyances in his name, until after they were made and delivered to Cook, and when the latter handed them to him, saying they might be of some use to him some day. Lampson was a director, and was guilty of a fraud upon the railroad company in receiving the conveyances, and refusing to convey the lands to its grantees and successors, under the circumstances detailed in the case. He did not pretend, when called upon to convey to the Buffalo, New York and Erie Railroad Company, that he had any interest in the lands when he received the deeds, but took them on Cook's suggestion that they might be of some use to him some day. The only ground then or at any time stated by him for such refusal, so far as the case shows, was that he had large demands against the Buffalo, Corning and New York Railroad Company, upon bonds of that company secured by a mortgage to

him and Daniel F. Miller, as trustees for bond holders, given in June, 1853, and which was declared to be subject to a prior mortgage for $1,000,000, executed by said company on said road, dated April 1st, 1852. In the absence of proof to the contrary, such bonds, if he had any, should be deemed to be held by him as such trustee for the second mortgage bond holders, and not in his individual right. I shall hereafter attempt to show that under the circumstances, he had not the shadow of right to interpose them as a defense to the claim of the plaintiffs.

If I am right in holding that the present case is relieved by the 53d, from the operation of the 51st section of our statute respecting uses and trusts, it follows that by the 50th section of the same statute, the common law rule in relation to resulting trusts must determine the nature and effect of the estate or interest of the Buffalo, Corning and New York Railroad Company in the lands in question at the time of, and upon the conveyances thereof to Lampson.

It is laid down by a modern and highly respectable author, that " the *cestui que trust* is entitled to the whole beneficial interest, and the trustee is considered in equity only as an intrument." That " it is a rule in equity that no act of the trustee shall be allowed to prejudice the *cestui que trust* and benefit himself. But sometimes, some such acts are binding on him, when third persons are concerned ; as, for example, when the trustee sells the trust estate as his own, to a stranger, without notice of the trust ;" and further : " *a cestui que trust* has the *jus habendi* and the *jus disponendi*, and though at law he has neither the *jus in re* nor the *jus ad rem*, yet in equity he has both. He is entitled to the pernancy of the profits, and also the possession of the estate, in all cases, where he is the only person interested, and the duties of the trustees do not render it necessary for them to retain the possession." (*Bouv. Inst. book* 2, *part* 3, *title* 2, *div.* 2, *chap.* 2, § 4, *p.* 333.)

Section 47, of title 2 of chap. 1, of part 2, of the Revised

Statutes, declares that "every person who, by virtue of any grant, assignment or devise, now is, or hereafter shall be entitled to the actual possession of lands, and the receipt of the rents and profits thereof, in law or in equity, shall be deemed to have a legal estate therein, of the same quantity and duration, and subject to the same conditions, as his beneficial interest." (1 *N. Y. Stat. at Large, p.* 677.) This section is found in art. 2 of the above title, and is entitled, " of uses and trusts." It follows, therefore, from the authorities referred to, and the positions assumed, that the Buffalo, Corning and New York Railroad Co., upon the execution of the five deeds in which Lampson was named as the alienee, became seised of a legal estate in fee in the lands described in those deeds ; and if so, they became, *eo instanti,* upon the execution of the deeds, subject to the lien and operation of the mortgage from the last mentioned company to the trustees in the first mortgage. That mortgage having been duly foreclosed by action in this court, in which the defendant, Miles P. Lampson, was a party defendant, and made such both individually and as trustee in the second mortgage, and the premises having been duly sold in pursuance of the judgment in such action to Stevens and Gray, two of the plaintiffs therein, who subsequently conveyed them to the Buffalo, New York and Erie Railroad Company, the present plaintiffs, the latter have thereby acquired a perfect title to the premises as against the defendants. The conveyances to Lampson, which have been recorded in the office of the clerk of Livingston county, are nevertheless a cloud upon this title, and the plaintiffs have the right to have it removed, which can be best done by a conveyance by the defendants to the plaintiffs. The judgment, on the report of the referee, properly provided that such conveyance should be made by both the defendants, Mr. and Mrs. Lampson. Mrs. L.'s apparent interest in the premises is no other than an inchoate right of dower ; but she can have no dower in lands which her husband held merely as trustee, without any beneficial interest therein.

(*Bouv. Inst. book* 2, *part* 3, *tit.* 2, *div.* 1, *chap.* 1, § 2, *art. No.* 1736, *vol.* 2, *p.* 238.   4 *Kent's Com.* 3d ed. *top paging* 42, *marg. p.* 43.)

In relation to the excuse of Lampson for refusing to convey the premises in question to the new company, when required so to do, that the first company was indebted to him on bonds, secured by the second mortgage, it is only necessary to say, in addition to what has already been said, that the plaintiffs have a clear prior lien upon the premises in question, which lien has been perfected by the foreclosure of the first mortgage, and a sale of the premises to the plaintiffs' grantor. By that process the plaintiffs' title is discharged from all indebtedness of the mortgagors, arising after the execution of the first mortgage.

For the foregoing reasons, we think the judgment appealed from should be affirmed, with the respondents' costs of the appeal to be paid by the defendant, Miles P. Lampson, to the respondents or their attorneys.

Ordered accordingly.

[Monroe General Term, March 4, 1867. *Welles, J. C. Smith* and *Johnson,* Justices.]