[Preston & Stetson v. McMillan.]

# Preston & Stetson *v.* McMillan.

*Bill in Equity by Wife to enforce Resulting Trust in Lands purchased with Money of her Statutory Estate and conveyed to her Husband.*

1. *Resulting trust; general doctrine concerning.*—The general doctrine is, that when the purchase-money of land is advanced by one person, while the title is taken in the name of another, a trust results, in the absence of an agreement to the contrary, in favor of the person who advanced the money; but to bring a case within the operation of this rule, the money must be paid at the time of the purchase.

2. *Same; as regards use of trust funds by trustee.*—When a trustee invests trust funds in the purchase of lands, and takes the title in his own name, or in that of a stranger, whether the payment is made at the time of the purchase or afterwards, the *cestui que trust* may claim the property so purchased, or any other specific property into which the trust funds can be traced; and can also assert a lien on it for reimbursement; and this right may be asserted not only against the trustee, but also against purchasers from him with notice, either actual or constructive.

3. *Same.*—This principle applies to a purchase by the husband, with moneys of the corpus of the wife's statutory estate, of lands the title to which he took in his own name; but the wife can not enforce her equity in such a case against a *bona fide* purchaser from her husband without notice, nor against a judgment creditor (Revised Code, §§ 1590–91) who had no notice prior to the levy.

APPEAL from the Chancery Court of Monroe.

Heard before Hon. CHARLES TURNER.

The original bill in this cause was filed on the 13th day of November, 1874, by the appellee, Tarnissa McMillan, by her next friend, against her husband and Preston & Stetson, to set up and enforce a resulting trust in her favor in certain lands her husband had purchased with moneys the corpus of her statutory estate, taking title in his own name, and to enjoin the sale of them on execution against her husband. It was afterwards amended by stating that the lands had been sold and conveyed by the sheriff to Preston & Stetson, and prayed that the sheriff's conveyance be annulled, and that Preston & Stetson be perpetually enjoined from interfering with the lands or claiming title under the sale and conveyance.

The case made by the bill and amendment, answers and testimony, may be thus stated :

Complainant, who was then a Miss Faulk, intermarried with her husband in Monroe county, in this State, in the year 1846. Her father died in the year 1852, leaving an

estate, which was administered in the probate court of Monroe county. On the 14th day of June, 1855, complainant's husband receipted to the administrator of her father for $649, as her distributive share of the estate, and she also received a negro slave from the administrator. The money was not actually paid over to complainant's husband, but retained by Roberts, the administrator, and placed to the credit of complainant's husband on a note he had given Roberts, as administrator of one Emmons, for the tract of land in controversy. The negro slave was traded off for others, one of whom was sold, and the remainder of the amount due for the lands, paid with the proceeds; but the exact date when this last payment was made is not shown. The whole amount thus paid was $1,260, and Roberts executed to complainant's husband a deed to the lands on the 7th day of April, 1856, and complainant and her husband have ever since resided on them. This deed was duly recorded on the 22d day of April, 1856.

During the years 1870 and 1871, complainant's husband contracted an account with Parker & Wiggins for provisions, clothing, &c., and in settlement of the balance due gave them his note for $323, on the 29th day of November, 1873. This note was transferred to Preston & Stetson in January, 1874, and they recovered judgment on it on the 22d day of April following. Execution was issued on this judgment on the 8th day of May, 1874, and placed in the hands of the sheriff of the county in which the lands were situated, and on the 13th day of October, 1874, returned "no property." An *alias* was issued, and received by the sheriff December 1st, 1874. The next day the execution was levied on the lands in controversy, and all of them, with the exception of 160 acres claimed as exempt, were sold on the 4th day of January, 1875, and bid in by one McCorvey for Preston & Stetson, to whom the sheriff executed a conveyance. It was not averred or shown that Preston & Stetson, or the person from whom they acquired the note, had any notice of complainant's equities prior to the levy of the execution. It does not appear when the subpœna was served upon Preston & Stetson. Their answer to the original bill was filed February 1st, 1875, and that to the amendment in May following. There was a decree *pro confesso* against complainant's husband. The answers denied notice of the wife's equity, and set up the long delay of complainant in asserting her equities in bar of relief, and averred that, upon the husband's ownership of the lands, the title and possession being in him, "as shown to the world, he obtained a credit of the debt on which the judgment was obtained, and complainant should not, after

[Preston & Stetson v. McMillan.]

the lapse of eighteen years, be allowed to set up her claim, and thereby defeat the rights of creditors," and averred the rendition of the judgment and the issue of execution thereunder, before the filing of the bill.

The chancellor decreed the relief prayed, and hence this appeal.

S. J. CUMMING, for appellants.—To constitute a resulting trust, it is not sufficient that the land was paid for with one person's money, while another took the title. The money must be paid or advanced *at the time of the purchase*—3 Ala. 302; *Botsford v. Burr*, 2 Kent Ch. 405. The evidence does not show when the purchase was made, or whether it was then intended to pay for the land with Mrs. McMillan's money, or when those payments were made. A resulting trust was, therefore, not proved.

2. Appellants come within the influence of § 1591 of the Revised Code. They were creditors, and had a *lien* at least from the date of the sheriff's receipt of the execution, if not from the rendition of the judgment, and all of this was before any notice of the wife's equities. The case of *Robison v. Robison* (44 Ala. 227), can not be sustained on authority; besides, this case is unlike that. In that case, the money was advanced to the husband, with the express understanding that it was to be used in paying for the lands. Here no such agreement or intention is averred or shown.

J. W. POSEY, *contra*.—The husband was a trustee, and paid for the lands with trust money, and the law raises a resulting trust in favor of the wife.—*Robison v. Robison*, 44 Ala. 227; *Holley v. Flournoy*, 54 Ala. The appellants must be *bona fide purchasers*, and show themselves to be such, before they can defeat the wife's right. They have not done this. They had notice before the sale. They have nothing to do with the staleness of the demand, if they had notice of it.

STONE, J.—We think the testimony in the present record fully proves that the money and property with which the lands in controversy were purchased and paid for, were of the corpus of the statutory separate estate of Mrs. McMillan. Although she and her husband intermarried before 1848, her father, Faulk, died about 1852; and the money and slave, which were used in paying for the lands, came to her from his estate after his death. Her husband employed the money thus received, and the proceeds of one of her slaves sold, in paying for the lands, and took the title in his own name. He and she have lived together, on the lands, ever

since the purchase; about twenty years, when this bill was filed. The object of the bill, is to prevent the sale of the land under an execution against her husband—to have a trust declared in her favor, and the title decreed to her.

When the bill was filed, the defendants, Preston & Stetson, had obtained a judgment in the Circuit Court of Monroe against McMillan, the husband, and execution issued thereon was in the hands of the sheriff, for levy and collection. The defense relies on this lien, and also on staleness, and the length of time elapsing between the origin of the trust, and the attempt to have it declared.

In *Goldsmith v. Stetson*, 30 Ala. 167, and in *Dent v. Slough*, 40 Ala. 518, the husband had mingled the money assets of his wife's statutory separate estate in his mercantile affairs; and the question was whether she could have a trust fastened on the mercantile effects, as a preferred creditor. It was ruled that she could come in only as a general creditor, without lien or priority. In each of these cases the property on which the trust was sought to be fastened, was personal goods; had been employed in merchandise which had been constantly changing by sales and reinvestments, and it was impossible to identify and segregate any particular articles or chattels, into which her money had entered and been converted.—See Thompson's Appeal, 22 Penn. St. 16.

In the present case, the money and effects of the wife's statutory separate estate were invested in lands, paying the entire purchase-money, and the title was taken in the name of the husband. Only a part—a little less than half—was paid at the time of the purchase. The residue was paid some two years afterwards, in discharge of the husband's debt for balance of purchase-money; soon after which time the title was made. This was eighteen years before the present bill was filed.

The general doctrine on the subject of resulting trusts is, that, in the absence of an agreement, express or implied, showing a contrary intention, when the consideration money is advanced by one, and the title taken in the name of another, a trust results in favor of the party who advances the money, and the land will be held by the grantee in trust for the person who so pays the consideration money.—2 St. Eq. Jurisprudence, § 1201, and authorities in note; *Boyd v. McLean*, 1 Johns. Ch. 582. But to bring a case within this rule, the money must be paid cotemporaneously with the purchase.—See *Foster v. Trustees, &c.*, 3 Ala. 302; *Danforth v. Herbert*, 33 Ala. 497; *Caple v. McCollum*, 27 Ala. 461; *Barnard v. Jewett*, 97 Mass. 87; Nixon's Appeal, 63 Penn. St. 279; *Botsford v. Burr*, 2 Johns. Ch. 405. And the consideration may

be paid in labor or property.—*Clark v. Clark*, 43 Verm. 685; *White v. Sheldon*, 4 Nev. 280. And Chancellor Kent declares the rule to be, that where part of the purchase-money is so paid by a third person, cotemporaneously with the purchase, a trust results *pro tanto.*—See *Botsford v. Burr, supra.* See, also, *Garrett v. Garrett*, 1 Strob. Eq. 96; *Church v. Sterling,* 16 Conn. 388; *Ross v. Hegeman*, 2 Edw. Ch. 373; *Jackson v. Bateman*, 2 Wend. 570; *Reid v. Fich*, 11 Barb. 399; *Buffalo &c. R. R. Co. v. Lampson*, 47 Barb. 533; *Brothers v. Porter,* 6 B. Monroe, 433; *Lathrop v. Gilbert*, 2 Stockt. Ch. 344; *Johnson v. Dougherty*, 3 Green, N. J. 406; *Baker v. Vining*, 30 Maine, 121; *McLawen v. Brewer*, 51 Maine, 402; *Valle v. Bryan*, 19 Mo. 423; *Pierce v. Pierce*, 7 B. Monroe, 7.

But the question we have been considering, is one of simple resulting trust, where there is no other relation between the person by whom the money is paid, and the person in whose name the title is taken, than that which the circumstances of the transaction itself impose upon them—where there is no relation of confidence or trust between the parties, except that A advances the money, and B takes the title. In the case we have in hand, the purchase was made by, and the title taken in the name of the husband, while the purchase price was paid with money and property which were of the statutory separate estate of the wife, of which he was trustee.

The Code of Alabama, § 2705, declares that "all property of the wife, held by her previous to the marriage, or which she may become entitled to after the marriage, in any manner, is the separate estate of the wife, and is not subject to the payment of the debts of the husband.—§ 2706. Property thus belonging to the wife, vests in the husband as her trustee, who has the right to manage and control the same. . . . . § 2707. The property of the wife, or any part thereof, may be sold by the husband and wife, and conveyed by them jointly by instrument of writing. . . . § 2709. The proceeds of such sale is the separate estate of the wife, and may be reinvested in other property, which is also the separate estate of the wife."

When the purchase is made, or the money paid with trust funds, such as the statutory separate estate of the wife, is the rule different? and if so, to what extent is it different? We have seen above that to constitute a resulting trust in ordinary form, the money must be paid at the time of the purchase; and if it be paid afterwards in extinguishment of a debt previously created, no trust results. But if the money thus paid be trust funds, what is the rule? The husband may reinvest the proceeds of the wife's property, sold by

them, in other property; and such other property becomes "also the [statutory] separate estate of the wife." If he re-invest such proceeds, and take the title in his own name, has she any remedy, and if so, against whom?

In Perry on Trusts, § 836, it is said, "If the trustee invests the trust funds, or its proceeds, in other property, the *cestui que trust* may follow the fund into the new investment, so long as he can identify the purchase as made with the trust prop-erty or its proceeds, although the trustee may have taken the title in his own name, or in the name of any other person with notice of the facts."

§ 837. "If a trustee purchases an estate partly with his own money and partly with trust money, it can not be predi-cated that any particular part of the estate was purchased with money of the *cestui que trust*, but he will have a lien on the whole estate for the amount of the trust fund that was misemployed."

§ 832. "If a trustee loans the trust funds in breach of the trust, and the borrower has notice of the trust and the breach, he becomes a *quasi* trustee; and he can not separate the loan from the trust, nor insist that the statute of limitations, which bars a loan as a loan, also bars the remedy for the trust fund in his hands."

So, if a trustee misapply trust funds, and pay them out for a purpose not authorized by the trust, and the person to whom he pays them has knowledge that they are trust funds, this is a breach of trust in each, and the person receiving the fund under these circumstances, becomes a trustee, liable for the performance of all the trust duties which rested on the lawful trustee.—Perry on Trusts, §§ 810, 814, 835, 836, 840, 841. "Where the trust fund constitutes a part only of the purchase-money of an estate, the court usually gives a lien on the land only for the amount of the trust fund in-vested and interest."—Perry on Trusts, § 842. See, also, *Meth. Epis. Ch. v. Jaques*, 1 Johns. Ch. 450.

The case of *Day v. Roth*, 18 N. Y. 448, was the investment of trust funds in part purchase of real estate, the title to which was taken in a third person. Speaking of the agree-ment to invest, under which the money was received, the court said: "It would impress the fund itself with the characteristics of a trust, and the impression would go with it into his hands, or into his estate. The plaintiff would have a right to follow and claim it so long as she could trace its identity into whatsoever hands it might be transferred, and to charge it upon any man's estate in which she might find it invested, unless the owner of the estate could claim

that after such investment he purchased the estate in good faith, and acquired the legal title."

The case of *Turner v. Petigrew*, 6 Humph. 438, was the purchase of slaves by a guardian at administrator's sale, and afterwards, a payment of the debt with the ward's effects. The ward claimed the slaves. The court said : "The reception of his own debt by the guardian, as a portion of his ward's distribution, from the administrator, and this debt having been contracted for a purchase of their negroes, makes as strong a case against him, as if he had actually paid out the money of his wards. It, so far as their interests and rights are concerned, places them in the same position ; and, inasmuch as it is the appropriation of the money that raises the equity, it can make no difference whether these appropriations be made at the time of the contract of purchase, or afterwards in payment thereof." The plaintiffs recovered the property.—See, also, *Barker v. Barker*, 14 Wis. 131; Hammett's Appeal, 72 Penn. St. 337 ; *Beck v. Ulrich*, 16 Penn. St. 499 ; *Seaman v. Cook*, 14 Ill. 501 ; *Stow v. Kimball*, 28 Ill. 93 ; *White v. Drew*, 42 Mo. 561 ; *Wallace v. Duffield*, 2 Serg. & R. 521 ; *Freeman v. Kelly*, Hoffm. Ch. 90 ; *Lee v. Fox*, 6 Dana, 171 ; *Pugh v. Pugh*, 9 Ind. 132 ; *Bancroft v. Causen*, 13 Allen, 50 ; *Williams v. Hollingsworth*, 1 Strob. 103 ; *Harrisburg Bank v. Tyler*, 3 Watts & Serg. 373 ; *Moffit v. McDonald*, 11 Humph. 457 ; *Oliver v. Pyatt*, 3 How. U. S. 333, 401 ; *Caplinger v. Stokes*, Meigs, 175.

So, in *Tilford v. Torrey*, 53 Ala. 120, this court said, "It is a well established principle in courts of equity, that if a trustee invests the funds he holds in a fiduciary capacity, in the purchase of lands, taking the conveyance of title in his own name, the *cestui que trust* may, at his election, charge the trustee personally, or may follow the money into the land, and claim the purchase as having been made for him. The principle applies when a purchase is made by a husband, with the proceeds or accumulations of the wife's separate estate. If a part only of the purchase money is paid with trust funds, a resulting trust will be created to the extent of the payment; or the *cestui que trust* may charge the lands with the repayment to him of the sum so paid."—See, also, *Kavanaugh v. Thompson*, 16 Ala. 817 ; Perry on Trusts, § 127.

It follows, from what is said above, that there is a notable difference between the cases of simple resulting trusts, and investments by a trustee of trust funds in his own name. In the former case, the payment must be made at the time of the purchase, to confer an equity on him whose money is used, to have a trust declared in his favor, of the entire estate

[Preston & Stetson v. McMillan.]

or a proportionate part of it, as he has paid the entire purchase-money, or only a part of it. After payments have no such effect, and confer no equitable rights in the land.

But when a trustee invests trust funds, or trust effects in property, and takes the title in his own name, or that of a stranger, no matter whether paid at the time of the purchase or afterwards, so long as such trust funds can be traced into specific property, the *cestui que trust* can claim the entire property, if entirely paid for with his funds; and can also assert a lien upon the property for reimbursement, to the extent his moneys were so misapplied.—See *Tilford v. Torrey, supra.* This right, however, exists only against the trustee, against persons who stand only in his right, and against purchasers from him with notice, actual or constructive. The right of the *cestui que trust* is only an equity; and *bona fide* purchasers from him who has the legal title, without notice of the violated trust, and without knowledge of some fact or circumstance sufficient to put them on inquiry, will acquire a good title. Only those who have notice of the breach of trust, and acquire the trust funds or their proceeds, notwithstanding such knowledge, forfeit their plea of *bona fide* purchase, and are charged *in invitum* with the burden of the trust. This scarcely can be called a resulting trust.

That what we have said may not be misunderstood, we feel it our duty to say that the rules laid down above do not apply, when a husband, as trustee, invests all or any part of the corpus or product of his wife's statutory separate estate, and takes title in her name. The statute authorizes him to do that.—Code of Alabama, § 2709; *Marks v. Cowles*, 53 Ala.; *Pylant v. Reeves*, 53 Ala.; *Sterrett v. Coleman*, December term, 1876.

It results from the principles above declared, that Mrs. McMillan has made out her claim to relief, if there be nothing else in this record to deprive her of such right.

The very long delay in asserting her claim has been urged in defense. Permitting title to remain in her husband, was certainly calculated to give him credit; and to allow her now to intercept the process of the law, and thus prevent the enforcement of his debts, would work a great oppression to his creditors. The title being in him, the possession would be referred to his title; and the public was justified in treating him as the owner.—1 Brick. Dig. 806, §§ 39, 40. See, as to staleness, *Hutton v. Landman*, 28 Ala. 127; *Garrett v. Garrett*, 29 Ala. 439.

As we have stated above, Preston & Stetson recovered a judgment against W. H. McMillan, the husband, April 22d, 1874. Execution upon this judgment went into the hands of

the sheriff of Monroe county—the county in which the lands lie—May 8th, 1874, and was returned by him October 13th, 1874. An alias execution on said judgment was received in office by said sheriff December 1st, 1874, was levied on the lands in controversy December 2d, 1874—and on the 4th day of January, 1875, said lands, less a homestead of 160 acres claimed by her husband, were sold and conveyed by the sheriff to Preston & Stetson. The bill in this cause was filed November 13th, 1874. The record does not show when summons was issued or served, but the answer of defendants was filed February 1st, 1875. There is no averment or proof that Preston & Stetson, or those from whom they acquired the note which is the foundation of the judgment, had notice of Mrs. McMillan's equity, other than what appears above as to the filing and answer of the bill.

The case of *Daniel v. Sorrells*, 9 Ala. 436, was as follows: Title to the lands had been in John Sorrells, but in January, 1842, he conveyed by deed to Smith, under whose title defense was made. This deed was placed in the proper office for registration August 25th, 1842. Plaintiff made title under a judgment rendered against John Sorrells July 25th, 1842, execution thereon August 5th—and sale by the sheriff, and purchase by him, under an alias execution properly issued, made February, 1843. Judgments were then liens on lands, from the date of their rendering. This court said, " The effect of the judgment was to give to the plaintiff therein a lien upon the real estate of the defendant, of which he was the legal proprietor, or of which he had been, and has not so disposed of the property against creditors, as to free it from liability against debts. * * Whether the purchaser from the sheriff was informed of the existence of the unregistered deed, after the rendition of the judgment, is not at all material. For we have seen that he may invoke the lien of the judgment creditor, to perfect his title."—*Jordan v. Mead*, 12 Ala. 247, is to the same effect. See, also, *Governor v. Davis*, 20 Ala. 366; *De Vendell v. Hamilton*, 27 Ala. 156. The principle of these authorities is, that the right of the purchaser dates from the time the lien accrued, under which he acquired title; and that want of notice in the judgment creditor, at the time his lien accrued, is, by relation, want of notice to the purchaser under such lien. These decisions overturn the older case of *Avent v. Read*, 2 Stew. 488.

But this principle, according to the general doctrine on the subject, as declared in most of the States, is confined to that class of counter claims which, under the registration laws, are required to be recorded, as a means of giving notice of their existence. Hence, it is said to have no application to equita-

ble rights which are not required to be recorded. And judgment creditors are held not to be purchasers, within the principle above set forth, as against trusts implied by law. Such judgment creditors, and purchasers at execution sale, take, as against such trusts, only such title as belonged to the debtor, with all encumbrances thereon.—See 2 Sto. Eq. Ju. § 1503 *b*, and note 2, as expressing the general doctrine on the subject. See, also, 2 Lead. Ca. in Eq. pt. 1, pages 89 *et seq.*, 4th Amer. ed., for a very full collation of authorities, and discussion of this principle; *Brace v. Duchess of Kingston*, 2 P. Wms. 491; *Lappington v. Oeschli*, 49 Mo. 244.

We have stated the general rule, which discriminates between those evidences of title to land which are required to be recorded, and trusts which arise by implication of law. In the Code of 1852, §§ 1320–1, Rev. Code, §§ 1590–1, Code of 1876, §§ 2199–2200, are the following provisions :

"No trust concerning lands, except such as results by implication or construction of law, or which may be transferred or extinguished by operation of law, can be created, unless by instrument in writing, signed by the party creating or declaring the same, or his agent or attorney, lawfully authorized thereto in writing.

"No such trusts, whether implied by law, or created or declared by the parties, can defeat the title of creditors, or purchasers for a valuable consideration, without notice."

The foregoing provisions are found in Article 5, Chapter 1, Title 1, Part 2, of our Code, which treats of the construction of conveyances and trusts, and modifies many of the common law rules in regard to real property. Many of its provisions were borrowed from the New York Revised Statutes, as we have frequently had occasion to state.—See Rev. Stat. of New York of 1829, vol. 1, pages 721 to 739 ; Part 2, Chap 1, Title 2, in four articles. Section 54, Article 2, is the only one bearing on the question in hand. Its language is, "No implied or resulting trust shall be alleged or established, to defeat or prejudice the title of a purchaser for a valuable consideration, and without notice of such trust." It will be observed that this section provides for purchasers only, and makes no mention of creditors. The construction of their statute rightly conformed to the general rule above declared. See *Sieman v. Schurck*, 29 N. Y. 598, 613, and earlier New York decisions cited. See, also, *Rodgers v. Bonner*, 45 N. Y. 379, 387.

In the case of *Sieman v. Schurck, supra*, the question was whether a judgment creditor came within the statute above copied. The court, after citing section 54, *supra*, said : "The defendants are not within this category for the following

reasons : 1. The plaintiff's deed was on record before the purchase at the sheriff's sale.  *  *  3. William Austin and Schurck had actual knowledge before the sheriff's sale that Youngs did not hold the deed for his own benefit. 4. Mary Austin was not a purchaser for a valuable consideration from her brother. 5. Neither William Austin nor Mary Austin, if notified before the purchase by them, of facts affecting Youngs' title, can be protected upon the ground that they had no such knowledge at the time of the judgment. In this particular their purchase takes effect from the time of the actual sale, and does not reach back by relation to the date of the judgment."

Unlike the New York statute, our's provides equally for creditors and purchasers. All will admit that *bona fide* purchasers without notice would be protected against latent equities and implied trusts. The statute, copied above, places creditors on equally elevated ground. Creditors, under this statute, are judgment creditors, having a lien.—*Thomason v. Scales*, 12 Ala. 309 ; *Daniel v. Sorrells*, 9 Ala. 439.

It is contended that section 2200 of the Code of 1876, protects only the *title* against latent equities ; and that inasmuch as creditors, as such, have no title to the property of their debtors, this clause does not reach or include them, until they have levied and sold under their lien, and thereby acquired title. The answer to this is, first, that this construction leaves no field of operation whatever to the word creditors ; for. after sale, the person claiming under it, does so as purchaser, and not as creditor. The one claim or right becomes merged in the other. But, second, the next section of the Code of 1876, 2201, puts this question at rest. That section reads as follows: "When a trust is created, or declared by any such instrument in writing, the recording thereof in the county where the lands lie, is equivalent to actual notice to every person claiming under a conveyance made, or lien created, after such recording." The three sections, from 2199 to 2201 inclusive, relate to one subject, are explanatory of each other, and must be construed together. Thus construed, the word lien in § 2201, shows what is meant by the words, "title of creditors," in § 2200. Title here is used in the sense of right.

Under these principles, the lien of Preston & Stetson dates back, by relation, to the time execution on their judgment was placed in the hands of the sheriff. The record fails to show, or even to aver, that they then had any notice of Mrs. McMillan's equity or claim. It follows that the chancellor erred in granting her relief.

The decree of the chancery court is reversed, and a decree

[Stone et al. v. Rice.]

here rendered dismissing complainant's bill, at the cost of her next friend in the court below and in this court.