# Griswold v. Griswold.

### Bill in Equity for the Enforcement of a Trust.

1. *Descent and distribution under statutory provisions.*—Under the provisions of the statute approved February 30th, 1891, (Acts 1890-91, p. 267), where a son dies intestate leaving no widow or children or descendant of children, and but one parent, such parent is a distributee of the decedent, and is entitled as such to one-half of said estate.

2. *Same; damages recovered by administrator, assets of intestate but not subject to payment of debts.*—The damages recovered by an administrator for the negligent killing of his intestate, are assets in his hands for the purpose of distribution only, and are not subject to the payment of the decedent's debts.

3. *Same; rights of distributee to follow trust funds.*—Where an administrator completes the purchase of land bargained for by himself and his intestate jointly, during the latter's life time, by paying the balance of the price due thereon with funds belonging to the decedent's estate, and takes title to himself, the heirs and distributees of the decedent may subject the land to the payment of so much of their respective distributive shares as they succeed in tracing into the land.

APPEAL from the City Court of Anniston, in Equity.

Heard before the Hon. JAMES W. LAPSLEY.

The bill in this case was filed on December 27th, 1892, by H. H. Griswold, the appellee, against the appellants.

The facts averred in the bill are substantially as follows :
Char'es Griswold, a son of the complainant, was killed
while in the employ of the Louisville & Nashville Railroad
Company by the explosion of an engine, on December
28th, 1891. His only heirs at law were the complainant
and A. L. Griswold and Walter Griswold, his brothers,
and one Clarence Thrash, a minor child of a deceased
sister.

In January, 1892, A. L. Griswold was appointed ad-
ministrator of the estate of Charles Griswold, and after
giving bond entered upon the administration thereof.
The estate consisted of a debt due from A. L. Griswold, the
administrator, to his intestate, amounting to $150, and
interest, and $55 which he had in hand at the time of the
intestate's death, and about the same sum due him from
the Louisville & Nashville Railroad Company as wages,
which was collected by the administrator, and his wear-
ing apparel. Pending the administration the Louis-
ville & Nashville Railroad Company, in pursuance of an
agreement between it and A. L. Griswold, the adminis-
trator, settled the latter's claim against it for causing
the death of Charles Griswold, by paying to his admin-
istrator $1,500. A. L. Griswold, as administrator, made
no report or inventory up to the time of the filing of the
bill, denied the right of the complainant to any share in
the distribution of his intestate's estate, and divided it
between himself and Walter Griswold. Before his
death, Charles Griswold furnished his brother, A. L.
Griswold, with $150, which was paid by him to the An-
niston Loan Company, in part purchase of a house and
lot in the city of Anniston, title to which was to be in A.
L. and Charles Griswold jointly, and that this amount,
with interest, was due and unpaid at the time of Charles'
death. It was then averred in the bill that since the death
of Charles, A. L. Griswold had paid out of the money be-
longing to his intestate's estate $350, in discharge of a
mortgage on said lot, had the title to said property con-
veyed to himself, and has conveyed by deed the said
house and lot to his wife, Elizabeth Griswold. That
said conveyance was without consideration, and made
for the purpose of hindering the collection of complain-
ant's debt against his administrator; and that at the
time of filing the bill A. L. Griswold had money in his
hands as administrator of Charles Griswold, deposited

in the bank. A. L. Griswold and Walter Griswold and their wives and Clarence Thrash, the minor heir of Charles Griswold, and the bank in which the money was alleged to have been deposited, were made parties to the bill.

The prayer of the bill was that A. L. Griswold be required to file an inventory of the estate of his intestate, and to make a settlement of his administration; that Walter Griswold be required to show how much of the estate of Charles Griswold he had received, and that the interest of the complainant in said estate be declared, and that the distributive share of one-half of said estate be ordered to be paid to him, and "in addition thereto that complainant be decreed, as father of said Charles, to be entitled to all the money saved from his money, which came, or ought to have come into the hands of the administrator." It was further prayed that a lien be declared upon the house and lot in Anniston referred to in the bill, "in favor of the estate of said Charles, and complainant's interest protected and the trust imposed upon the same for the amount of the money of the estate of said Charles invested by said A. L. Griswold, administrator, in said lot, and for the amount of money borrowed from Charles Griswold, in his lifetime, and said A. L. Griswold, and by him used in paying on said lot. That a lien and trust be imposed in favor of the estate of said Charles, and complainant's interest protected on the money belonging to said estate, which was deposited in the First National Bank of Anniston."

In their answer to the bill the respondents admitted the death of Charles Griswold, the appointment of A. L. Griswold as administrator, the payment to him of $1,500 by the Louisville & Nashville Railroad Company, and that he had never made any report or inventory of said estate, and that A. L. Griswold and Walter Griswold denied the right of complainant to share in said estate.

In reference to the interest of Charles Griswold in the house and lot in the city of Anniston described in the bill, the respondents averred in their answer, and it was shown by the evidence, that "the lot in controversy, was purchased by Joseph Cryan from the Anniston City Land Company on March 17th, 1890, for $600, and that he paid $300 in stock of said company at par on said day; that A. L. Griswold purchased the lot from Cryan,

[Griswold v. Griswold.]

and made payments to said company as follows, to-wit,
$80, March 24th,1891 ; $20, April 1st,1891 ; $200, Febru-
ary 24th, 1892, and $39.55 interest. That said compa-
ny made a deed dated January 9th, 1892, conveying
said property to A. L. Griswold ; that on the 23d of Feb-
ruary, 1892, A. L. Griswold owed said Anniston City
Land Company $239.55, and that on that day he bor-
rowed $320 by note and mortgage on the house and lot
described in the pleadings in this cause, and on the 24th
of February he paid the Land Company $239.55. He
afterwards paid off the mortgage with money he got
from Charles Griswold's estate. That A. L. Griswold
before the commencement of this suit, conveyed said lot
to his wife, and the title is now in her name.''

The defendants further averred in their answer as a
reason why the complainant was not entitled to share in
the estate of Charles Griswold, the fact that he was an
inhuman and unnatural father, in that he had aban-
doned the defendants and Charles Griswold and his
other children when they were young, and had left them
to the care of other people, and had never in any way
contributed to their support, and that Charles Griswold
had been cared for and supported by A. L. and Walter
Griswold up to the time when he was able to care for
himself. The evidence for the defendants showed that
these averments were true.

On the submission of the cause, upon the pleadings
and proof, the court decreed that the complainant was
entitled to the relief prayed for, and to one-half of the
$1,500 which had been paid to A. L. Griswold by the
Louisville & Nashville Railroad Company, and ordered
a reference, in order to state an account of the amount
due the complainant from the defendant, by reason of
the matter set forth in the bill, and to report what
moneys, if any, belonging to the estate of Charles Gris-
wold had been invested by defendants, or either of them,
in paying for the real estate described in the bill, and
whether said Charles, in his lifetime, paid anything on
said estate. After holding the reference so ordered, the
register reported that A. L. Griswold, as administrator,
was indebted to the estate in the sum of $1,876.46. He
further reported that $495.69 of the moneys belonging to
said estate entered into the purchase of said lot.

On the final submission of the cause, on the coming

in of this report, the court decreed that the complainant would recover of A. L. Griswold and Walter Griswold $938.23—one-half of the amount due by A. L. Griswold to the estate—and that $495.69 of such amount was decreed to be a lien on the lot described in the bill. From this decree the respondents appeal, and assign as error the decree ordering a reference, and the final decree.

MATTHEWS & WHITESIDE, for appellants.—1. Complainant is and was not entitled to any portion of the $1,500.00 by virtue of the statute of distributions notwithstanding its subsequent amendments. (Acts 1890–91, p. 267, and Acts 1892–93, p. 1055). These sections, 2589 and 2591, are particular, separate and independent acts, conferring a benefit on the brothers and sisters first of the intestate, to the exclusion of his parents, in the disposition of a specific asset, made so by the very statutes which provide how it shall be distributed. They can not then be amended or their provisions be extended or conferred by an amendment of the statute of distributions of which they are not a part. Art. IV, § 2 Constitution of Ala.; Code 1886, p. 26; *Cook v. Meyer*, 73 Ala. 580; *Faust v. Mayor*, 83 Ala. 279; *State v. Callac*, (La.) 12 So. Rep. 119.

If the statute of distributions as it existed, at the time of their enactment, or that portion of it which is by reference to it made a part of them, was copied in said sections, there could be no hesitancy in answering the question—that they can not be so amended. It is a well recognized rule that an act adopting by reference the whole or a portion of another statute means the law as existing at the time of the adoption, and does not adopt any subsequent addition thereto or modification thereof.—*U. S. v. Paul*, 6 Pet. 141; *Kendall v. U. S.*, 12 *Ib.* 524; *Shrew v. Jones*, 2 McLean 78; *Knapp v. Brooklyn*, 97 N. Y. 520; *Re Main St.*, 98 *Ib.* 457; *Schlaudecker v. Maloney*, 45 Mich. 621; *State v. Davis*, 22 La. An. 77; *Oleson v. R. R. Co.*, 36 Wis. 383; *Bird v. Adcock*, 47 L. J. M. C., 123.

The decree of the court was erroneous in decreeing any lien at all, and also in decreeing a lien for the full amount of the money paid to complete the purchase of the lot. The payment of the mortgage out of a portion of the $1,500 on June 1, 1892, after the lot had been

paid for by A. L. Griswold with his own money and conveyed to him did not furnish a basis for the imposition of a trust or the fastening of a lien on it in favor of complainant.—Perry on Trusts, (2d ed.), § 133; *Torrey v. Tilford*, 53 Ala. 122. To create a resulting trust in the purchase of land, a payment of the trust fund at the time of the purchase is indispensable.—*Preston v. McMillan*, 58 Ala. 91; *Tilford v. Torrey, supra*; *Robinson v. Robinson*, 44 Ala. 235; *Bottsford v. Burr*, 2 Johns. Ch. 414.

T. C. SENSABAUGH and JOSEPH CARTHEL, *contra.* The father was, under the statute, a distributee of the decedent's estate, and was entitled to a one-half interest in the estate.—Acts 1890–91, p. 267.

When a trustee invests trust funds in his hands in the purchase of lands, and takes title in his own name, or in that of a stranger, whether the payment is made at the time of the purchase or afterwards, the *cestui que trust* may claim the property so purchased, or any other specific property into which the trust funds may be traced; and can also assert a lien on it for reimbursement and this right may be asserted not only against the trustee but also against purchasers from him with notice, either actual or constructive.—*Preston v. McMillan*, 58 Ala. 84; *Whaley v. Whaley*, 71 Ala. 159.

McCLELLAN, J.— Under the act of January 30, 1891, the complainant is a distributee of the estate of Charles Griswold, his son, who died in December, 1891, and entitled as such, the other parent of said Charles having pre-deceased him, to one half of said estate.—Acts 1890—91, pp. 267—8.

The estate consisted for the most part of damages recovered by A. L. Griswold, as administrator of said Charles, for the wrongful act or omission of a third party resulting in his death. These damages in the hands of the administrator, were assets only for the purposes of distribution—they were not subject to the payment of debts or liabilities of the decedent—and were to be distributed according to the statute of distribution of force at the time the claim for damages accrued. For the purposes of this case that statute was the act of 1891, referred to above; and under it complainant

37

was entitled, as we have said, to one-half of the fund.—
Code, § 2591.

The payment of one hundred and twenty-six dollars
by A. L. Griswold of money belonging to the intestate
in his lifetime was, of course, payment *pro tanto* of the
purchase money for the lot sought to be subjected to
complainant's demand. As to the other sum of about
two hundred and ninety-five dollars paid by A. L. Gris-
wold, there can be little if any doubt that it was essen-
tially purchase money of said lot, the facts being that it
was paid in satisfaction of a mortgage on the land to
secure money borrowed to pay a balance of purchase
money, the conveyance by the vendor and the mortgage
to raise the funds in consideration of which the convey-
ance was made being contemporaneous, so that in reali-
ty no beneficial interest was vested in Mrs Griswold by
the conveyance until the purchase money raised under
the mortgage was paid to the mortgagee, and this was
done with funds belonging to the estate of Charles Gris-
wold. Thus it was that the purchase money for the lot
to the extent of about four hundred and twenty-one dol-
lars was paid by A. L. Griswold, in part as the agent of
Charles and for the rest as his administrator, out of
funds belonging to said Charles in one part and to his
estate in the other part. A. L. Griswold was charged
in both capacities with the duties of a trustee, and hav-
ing violated his trust by having title in the land made
to himself, and further by executing a voluntary con-
veyance of it to his wife, the heirs and distributees of
said Charles are entitled, having clearly traced the
funds of his estate into the land, to subject it to the pay-
ment of their distributive shares. - *Preston v. McMillan*,
58 Ala. 84; *Whaley v. Whaley*, 71 Ala. 159.

But this result is worked out on the theory that the
money so invested in the land belongs to the distributees
rather than upon any theory that the trustee is indebted
to them in the sum of such investment; and the reme-
dy is given to the end that the complainant, in a case
like this, may get *his* money out of land standing in the
name of the respondent into the purchase of which *his*
money has gone, and not that the complainant may col-
lect money which the respondent owes him by subject-
ing lands belonging to the respondent to its payment.
Or, in other words, the complainant must trace his mon-

ey, or money which he is entitled to receive in specie, into the land, and his relief, by way of the enforcement of a trust upon the land, is measured by the amount of such money so traced by him. Now, this four hundred and twenty-one dollars which went in payment of the purchase price of the land involved here, belongs to the estate of Charles Griswold, and his administrator, had he been other than A. L. Griswold, could have subjected the lot to its payment to the estate. But the complainant does not represent or stand in the place of the estate. He is a distributee and complains in that capacity alone. As such he was entitled to only one-half the sum for which the estate might have subjected the land; about two hundred and ten dollars of, and instead of, the four hundred and twenty dollars belonged to him. True, it is shown that he is entitled to receive a larger sum out of the estate, but such larger sum is constituted by dividing into two equal parts all the assets of the estate, those that were not invested in this land as well as the funds which were so invested; and his interest in any and every part of the trust funds is only to the extent of his distributive share.

The city court erred in declaring a lien on the lot in complainant's favor for the gross amount of money belonging to Charles Griswold and his estate which was invested therein. We prefer not to modify and affirm the decree here, but will remand the cause.

Reversed and remanded.