# Dean v. Roberts, et al.

*Bill to Cancel Conveyance as Cloud on Title, and to Vest Title in Complainant.*

(Decided January 23, 1913.    Rehearing denied April 23, 1913.
62 South. 44.)

1. *Trusts; Fraud; Evidence.*—The evidence examined and held sufficient to show that respondents were trustees for complainant to make an exchange of land for him, but that by fraud they took title to the property received in exchange in themselves.

2. *Same; Construction; Statute of Frauds.*—Where, in order to complete an exchange of land, the brokers orally agreed to loan their principal $1,000, to be secured by mortgage on property to be received in exchange, and brokers fraudulently took title to the property so received in their own name, the statute of frauds cannot be urged to defeat the right of the principal to have the conveyance cancelled, and the title decreed in him.

3. *Vendor and Purchaser; Bona Fide Purchaser; Evidence.*—The evidence examined and held to show that a purchaser from the brokers of a portion of the land received in exchange by them for lands of their principal, title to which was taken in the broker's name, was a bona fide purchaser.

4. *Same; Notice.*—Where brokers employed to exchange land fraudulently took title to the property obtained in exchange in their own name, a purchaser from such broker who was notified by the principal of his interest, before the purchase, is not a bona fide purchaser.

5. *Equity; Maxims.*—Where the equities are equal, the legal title should prevail.

6. *Brokers; Advancement; Reimbursement; Fraud.*—Where, in order to complete an exchange of land, brokers agreed to loan their principal a $1,000, and on perfecting the exchange fraudulently took title in themselves to the land exchanged, and sold to a bona fide purchaser, a portion of it, for which they received $250 and 80 acres of land, which land they subsequently sold for $800, on the deed being set aside, the brokers would have no claim for the $1,000 loan.

7. *Same; Compensation; Fraud.*—Where brokers fraudulently took title in themselves to land exchanged on behalf of their principal, they have no claims to compensation upon the conveyance being set aside for fraud.

8. *Same; Rental Value of Land.*—Where brokers employed to exchange land for their principal fraudulently took conveyance in their own name and sold a portion of it to one with notice of the principal's interest, such person being a party to the bill, and the deeds are set aside at the instance of the principal, both the brokers and the purchasers are liable for the fair rental value thereof of so much as is sold; the brokers being primarily liable, the purchaser should not be compelled to pay if the money can be had from the brokers.

9. *Same.*—Where, under such circumstances the conveyance is set aside, the brokers are liable for the reasonable rental value of the property held by them under the conveyance, subject to credit for taxes paid.

10. *Cancellation of Instruments; Bona Fide Purchaser; Notice; Improvement.*—Where the purchaser of land from a broker had notice before the purchase of the principal's claim of interest, the broker having fraudulently took title in his own name, the purchase cannot recover for improvements made on the land purchased, on title being declared to be in the principal.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Bill by Edward E. Dean against A. C. Roberts and others to cancel a conveyance as cloud on title, to cancel and annul a conveyance of lands by respondent, and to invest title in complainant. From a decree for respondents complainant appeals. Reversed and rendered in part, and in part remanded.

HARSH, BEDDOW & FITTS, for appellant. There was a resulting trust in Roberts in whose name title was taken, with complainant as a beneficiary thereof.— *Haney v. Legg, et al.,* 129 Ala. 625, and cases there cited; 2 Pom. Eq. 611. The court could and should have considered the admissions of the respondent as to the fact of agency contained in their original answer, although these admissions were subsequently cut out in their amended answer.—49 Ala. 104; 69 Cal. 133: 57 S. W. 856; 44 S. C. I; 87 N. C. 256; 73 N. Y.

543; 125 Mo. App. 404; 80 Minn. 466; 466; 112 Ind. 533; 26 Ill. 482.

TILLMAN, BRADLEY & MORROW, L. C. LEADBEATER, M. M. BALDWIN, B. K. FISK, and P. P. WALDRON, for appellees. The motion of the defendants to exclude that part of the testimony of complainant relative to transactions with or statements by defendant Boyle, who died before the cause was submitted, is supported by all the authorities.—Sec. 4007 of 1907 Code; *Watkins v. Carter,* 164 Ala. 456; *Holloway v. Wilkerson,* 150 Ala. 297; *Browning v. Kelley,* 124 Ala. 645; *German v. Brown & Leeper,* 145 Ala. 364; A. & E. Ency. Law (2nd Ed.) Vol. 30, p. 985; *Bibb v. Hunter,* 79 Ala. 351; *Wood v. Brewer,* 73 Ala. 259; *Miller v. Cannon,* 84 Ala. 59; *Keller v. Lide,* 65 Ala. 505. The testimony of complainant relative to transactions with or statements by decedent Boyle, is inadmissible as against Roberts; who was a partner of Boyle, and the motion of Roberts to exclude same was well made.—Authorities supra; *Parker v. Edwards,* 85 Ala. 246. In order to establish a resulting trust in all the lands described, the bill must aver and the proof must show that the entire consideration therefor was paid by plaintiff at or before the conveyance. Neither the allegations nor the proof show this.—*Bibb v. Hunter,* 79 Ala. 351; *Lehman v. Lewis,* 62 Ala. 129; *Whaley v. Whaley,* 71 Ala. 159; *Long v. King,* 117 Ala. 423; *Patton v. Beecher,* 62 Ala. 579; *Winston v. Mitchell,* 87 Ala. 395. The allegations of the bill are not sufficient to show that the money part of the consideration was furnished by the plaintiff either with money of his own or with money advanced to him by defendants by way of a loan.—*Hughes v. Letcher,* 52 South. 914; *Watkins v. Carter,* 164 Ala. 456; *Danforth v. Herbert,* 33 Ala. 497; *Reaves v. Garrett,* 34 Ala.

558; *Bibb v. Hunter,* 79 Ala. 357; *Lehman v. Lewis,* 62 Ala. 129; Pomeroy Eq. Jud. (3rd Ed.) Sec. 1037; *Butts v. Cooper,* 152 Ala. 375-385; *Gilbreath v. Farrow,* 147 Ala. 183; A. & E. Enc. of Law, Vol. 15, p. 1148. The proof does not show that the money was furnished by plaintiff, though if it did, proof without averment would be unavailing.—*Salmon v. Wynn,* 152 Ala. 538. The money part of the consideration not being furnished by plaintiff, there can be no resulting trust pro tanto because the Texas land furnished by him was not averred nor shown to be an aliquot part of the consideration.— *Watkins v. Carter,* 164 Ala. 459; *Carlson v. Erickson,* 164 Ala. 380; *Butts v. Cooper,* 152 Ala. 375; *Bibb v. Hunter,* 79 Ala. 351-361; *Allen v. Caylor,* 120 Ala. 252; *Winston v. Mitchell,* 87 Ala. 251; *Sanders v. Steele,* 124 Ala. 415. If the bill proceeds upon the theory of a constructive trust, then the fiduciary relation growing out of agency must be proved independently of the parol agreement.—*Spratt v. Wilson,* 94 Ala. 608; *Waller v. Jones,* 107 Ala. 331; *Winston v. Mitchell,* 87 Ala. 395. If agency ever existed, the proof shows that it had terminated before the purchase, and the alleged agent could therefore act for himself without violating any duty owing to the former principal.—*Scottish Union, etc. v. Dangiax,* 103 Ala. 394. If the bill proceeds upon the theory of a trust ex maleficio, neither averments nor proof show any fraud under the original transaction.— *Patton v. Beecher,* 82 Ala. 579-592; *Brock v. Brock,* 90 Ala. 92; *Smith v. Smith,* 153 Ala. 504; *Moseley v. Moseley,* 86 Ala. 289. If a trust existed, it is a parol trust and void under the statute because not in writing.— *Mitchell v. Wright,* 155 Ala. 458; *Patton v. Beecher,* 62 Ala. 579; *Rose v. Gibson,* 71 Ala. 35; *Whaley v. Whaley,* 71 Ala. 159; *White v. Farley,* 81 Ala. 563; *Brock v. Brock,* 90 Ala. 86. The burden of proof is on plaintiff.

—*Carlson v. Erickson,* 164 Ala. 380; *Emfinger v. Emfinger,* 137 Ala. 337. Plaintiff must overcome the presumption arising from the conveyance by clear, full, satisfactory and convincing proof.—*Holloway v. Wilkerson,* 150 Ala. 297; *Gilbreath v. Farrow,* 147 Ala. 183; *Holt v. Johnson,* 52 South. 323; *Lehman v. Lewis,* 62 Ala. 133. There is a variance between the allegations and the proof and plaintiff is not entitled to relief.— *Johnston v. Jones,* 85 Ala. 286; *McDonald v. Walker,* 95 Ala. 172; Authorities supra. Dabbs was a bona fide purchaser for value without notice of plaintiff's alleged equity. Notice of the fiduciary relation was not sufficient.—*Preston v. McMillan,* 58 Ala. 84; *Brodie v. Ward,* 151 Ala. 198; *Scott v. Griggs,* 49 Ala. 185.

DE GRAFFENRIED, J.—The following extract from the testimony of the only living member of the defendant partnership, viz.: "Mr. Dean said, 'Now, men, you-uns has got all my papers, and I ain't got no more show than a rabbit, but I believe you-all will do what's right about it,"—coupled with the marked difference between the answer of the respondents as originally filed and their answer as amended, has not been without effect in the determination of this cause by this court.

In the fall or winter of 1902 John J. Walker conveyed to A. C. Roberts about 100 acres of land in Jefferson county. The consideration of this conveyance was a conveyance made by Edward E. Dean to said John J. Walker to 187.60 acres of land in the state of Texas, and $1,000 in money. The deed from Edward E. Dean to said Walker bears date September 29, 1902, and recites a cash consideration of $3,500. The $1,000 was paid in money, $500 by A. C. Roberts, and $500 by Robert E. Boyle. Roberts and Boyle were partners in the real estate business in Birmingham, and they claim

that they bought for themselves the land from Walker; that Dean was very anxious for them to sell his Texas lands for him; that in their negotiations with Walker for the purchase of his lands they were able to work Dean's land off for him on Walker, who desired to move to Texas, by swapping Walker the Dean lands in Texas for the Walker lands in Jefferson county, and by paying Walker, as boot, said sum of $1,000. Roberts and Boyle further claim that they fully informed Dean of the manner in which they could thus dispose of his land, and that they would make the trade, provided he (Dean) would accept $500 for his Texas land and allow them to pay him the $500, less a commission for selling his land for him, when they were able to dispose of the *Walker* lands. In other words, according to the contentions of Roberts and Boyle, Dean agreed to take $500 for his Texas lands, less the commission for selling them, and was not to get *that* until the Walker lands were disposed of by Roberts and Boyle. They also claim that they knew nothing of the title of Dean to his Texas lands, and that, to avoid any liability as warrantors of the title to said lands, they had Dean to execute a deed, with covenants of warranty as to title, conveying the Texas lands direct to Walker in fee simple. While Roberts and Boyle claim that they were only to pay Dean $500 for said Texas lands, and that *only* when the Walker lands were sold by them, the deed from Dean to Walker recites a cash consideration of $3,500 paid by Walker to Dean. The deed from Dean to Walker was prepared, according to the contention of Roberts and Boyle, under *their* direction, and the consideration of $3,500 expressed in *that* deed was placed, according to *their* contention, in said deed in accordance with *their* wishes. It is not contended that Walker, the purchaser of the Texas lands, directed that the deed from Dean

to him to said lands should express the above considera-
tion; and *why*, if the *truth*, as to this transaction is as
Roberts and Boyle claim it to be, they desired Dean to
express in his deed to Walker a *cash* consideration of
$3,500, when in fact he was only to receive $500 at some
future day, we are not satisfactorily informed by the
evidence upon which this cause was submitted.

Dean, who is a cripple, lived in Birmingham. So did
Roberts and Boyle. Walker lived near Bessemer, which
is 10 or 12 miles from Birmingham. The negotiations
for the purchase of the Walker lands were conducted
by Roberts and Boyle, with Walker either in Bessemer
or at Walker's home, which was on the said Walker
lands, not far from Bessemer. The deed from Dean to
Walker and the $1,000 were delivered by Roberts to
Walker at Walker's home on the Walker lands on the
day after Dean executed and delivered to Roberts and
Boyle the above deed conveying the Texas lands to
Walker. When Dean delivered said deed to Roberts
and Boyle they gave him no paper, no writing, or other
kind of evidence of their alleged agreement with him.
They simply took his deed to Walker, which conveyed
all the land which he appears to have owned in the world,
and left him with an alleged verbal promise to pay him,
at some future day, $500. When Dean left Roberts and
Boyle's office on the occasion named his land in Texas
was gone. It was *then*—just as Dean was leaving the
office of Roberts and Boyle—that, according to the evi-
dence of Roberts: "Mr. Dean said, 'Now, men, you-uns
have got all my papers, and I ain't got no more show
than a rabbit, but I believe you-all will do what's right
about it.' That was before Walker made the deed to
me (Roberts), but when Dean had made the deed to
Walker and delivered it to me." The day after Dean
made the above statement, Roberts, as we have already

said, delivered the deed and the $1,000 to Walker, and Walker delivered to Roberts a deed conveying the Walker lands to *Roberts*. This deed from Walker to Roberts was *never recorded*, and all that we know of the consideration which is expressed in the deed from Walker to Roberts is the statement of Walker that, "My land in Alabama was placed at $3,500." Shortly after Roberts obtained the above deed from Walker he conveyed to C. L. Dabb 39½ acres of the land in consideration of $250 in money and a deed to 80 acres of land, which was sold shortly thereafter for $800, so that, in reality, Roberts and Boyle actually received in lands and money $1,050 for said 39½ acres of land. Subsequently the said Boyle conveyed 28 other acres of said Walker lands to said Dabbs, upon a consideration recited in the deed of $660. This amount, Dabbs testifies, was paid to Roberts in cash.

We have above given the side of Roberts and Boyle to this transaction, and we will now give the contention of said Edward E. Dean.

Dean claims, and on this subject he is corroborated by all the witnesses, that he opened negotiations with Walker direct some time before he ever mentioned the matter in any way to Roberts and Boyle. He seems to have learned that Walker intended to move to Texas, and he saw Walker and told him that he owned the above-mentioned lands in Texas, and indicated that he would be glad to swap him the lands in Texas for the Walker lands in Jefferson county. He further claims that while these negotiations were pending he saw Roberts and Boyle as real estate agents, and engaged their aid as such agents toward making the trade with Walker. On this subject there also seems to be no serious dispute between the parties. Dean also claims, and in this he is also corroborated by all the witnesses, that

he took Roberts with him to see Walker and the Walker lands, and talked with Walker in Roberts' presence about the proposed exchange. From this point there is a broad divergence in the testimony of Dean on the one hand and of Roberts on the other, but in some material ways, Dean, as we will hereafter point out, is strangely corroborated by Roberts, and those corroborative statements or admission of Roberts tends strongly to show that Dean's version of this matter is the true version, and in this, as in all controversies, the truth should control. Dean claims that Roberts and Boyle continued to represent him; that, as his agents, he disclosed to them his desire to dispose of his Texas lands and his willingness to compensate them for aiding him in so doing, and that Roberts and Boyle continued their negotiations with Walker until they finally reported to him that Walker would make him (Dean) a deed to his said lands, provided Dean would convey to him (Walker) the lands in Texas and pay him $1,000 as boot. Dean further claims that he informed Roberts and Boyle that he was willing to make the trade, provided he could raise the money, and that Roberts and Boyle agreed to lend him the money at 8 per cent. per annum, secured by a first mortgage on the Walker lands. Dean claims that he agreed to this, and that (as we understand the testimony) Roberts and Boyle were to try to find him a purchaser for the Walker lands, and when they did so, they could, if they desired, call in their loan of $1,000, and also retain out of the proceeds of the sale a sum sufficient to compensate them for their entire services. Dean claims that, acting on the above representations on the part of Roberts and Boyle as his agents, and under the agreement with them as to the payment of the $1,000 he executed the deed to Walker, and delivered it to Roberts and Boyle with the understanding that they were to deliver it to Walker upon

the delivery by Walker of a properly executed deed con-
veying to him (Dean) the Walker lands. Dean further
claims that after he delivered the deed to Roberts and
Boyle they represented that a hitch had occurred in the
negotiations, but that they hoped to ultimately put the
deal through, and that, relying upon their representa-
tions, he left the matter entirely with them, and that he
did not learn that Walker had made a deed conveying
the lands to Roberts until *after* Walker left for Texas
in the latter part of the year 1902, or in the early part
of 1903. Dean further claims that shortly after Walker
left for Texas he called on Roberts, and that Roberts
then, for the first time, admitted that the trade had been
made, and claimed that the deed had been filed for rec-
ord in the probate office.

There is no doubt about one fact as to which Roberts
corroborates Dean. Roberts claims, which Dean de-
nies, that he told Dean that the deed had been made to
him (Roberts), but he admits that he told Dean that it
had been filed for record in the probate office. *The deed
had not been filed for record.* Dean made a diligent
search for it, and he did not find it. Roberts, in his tes-
timony, undertakes to explain why he had not filed the
deed for record, but his explanation does not appear to
be satisfactory. Dean testifies that Roberts told him
that the deed had been made to him (Dean), and that it
had been filed in the probate office, but that he not only
did not find a deed to him but found none to Roberts
in the probate office, but he did find a deed there from
Roberts to C. L. Dabbs conveying a part of the Walker
land to Dabbs; that he at once saw Dabbs and told him
of his claim on the Walker land. This Dabbs admits,
and he also admits that after this notice, he bought an-
other part of this same land from Walker. Dean further
claims that he never knew that the deed had been made

to Roberts until after he had made a long and fruitless search in the probate office, and then claims that either Roberts or Boyle admitted that the deed had been made to Roberts. Roberts claims that he told Dean the day after Walker delivered to him the deed that Walker had sold the land to Roberts and Boyle, and that they would soon be in a position to pay him the $500, and in this he is corroborated by some witnesses who "happened" to be in the office. Roberts is also corroborated in his claim that Dean sold Roberts and Boyle the Texas land by parties who "happened" to hear conversations between Dean and Roberts and Boyle. If Roberts informed Dean that the deed had been made to him (Roberts) ; if Roberts and Boyle in fact bought the land from Dean for $500—if either one of the above things is true —then why Dean should have confessedly made a search of the probate office for the Walker deed does not satisfactorily appear. Boyle was dead when the testimony was taken, and when the original answers of Roberts and Boyle were practically abandoned, by the solicitors for Roberts and Boyle, by amending those answers, and the case for the respondents is made by the evidence of Roberts and the witnesses produced by him.

There is much conflict in the evidence in many material points, but there are some things about which there can be no dispute, and these things, we think, are reasonably safe guides to the truth. Dean *trusted* Roberts and Boyle, for after he had delivered to them a deed conveying to Walker all of the land he owned in the world, without taking from them the scratch of a pen as evidence against them, he said to these men—real estate agents, presumably accustomed to business—"You have all my papers; I have nothing to show the agreement between us, but I believe you will do what is right." Dean made the deed to Walker, not to Roberts and

Boyle, and the Texas land was a part, a large part, of the actual consideration of the Walker deed to Roberts. Walker sold his land for $3,500, and necessarily he accepted the Dean deed as $2,500 of that sum. Roberts and Boyle were introduced to Walker by Dean, and certainly—if all the evidence is to be believed—Roberts and Boyle conducted negotiations with Walker as the agents of Dean. They finally succeeded in doing the very thing which Dean at the outset employed them to do, viz., they traded the Dean lands for the Walker lands. They claim that when they did this they had purchased from Dean and were acting for themselves. Equity abhors fraud, and is swift in aiding those who, through fraudulent practices, have been overreached. Equity is a court of conscience. It lays bare every transaction which is brought before it and goes to the very root of the matter. While there are, as we have already said, many conflicts in the evidence, the indicia of fraud in this matter are too great for us to hold that Roberts and Boyle did not deceive and overreach Dean, a man for whom they were in reality acting as agents, and from whom they had received a superabundance of confidence and trust. In our opinion when Walker made the deed to Roberts the land, in equity, belonged to Dean, charged with the payment by Dean of $1,000, which Dean owed Roberts and Boyle, and which was to bear interest at the rate of 8 per cent. per annum until that sum was paid by Dean.

2. This bill was filed by the said Edward E. Dean against A. C. Roberts, Robert E. Boyle, and C. L. Dabbs. It alleges that the deed to which we have above referred from Walker to Roberts was in equity a conveyance to said Dean. It further alleges that Dabbs had conspired with Roberts and Boyle, and had, with a knowledge of the complainant's claim in equity to said

land, made pretended purchases of said land, and prays that the conveyance from Walker to Roberts be canceled as a cloud upon the title of complainant; that complainant be invested with the title to said land; that the sales to Dabbs of said two tracts of land be annulled, and for other appropriate relief.

Boyle, as we have already said, was dead when the amended answers were filed, and he died before all of the testimony in this case was taken. Substantially all of the negotiations between complainant and Roberts and Boyle were had by complainant with Roberts, and we discard from our consideration, in determining the issues in this case, any statement which was made by Boyle to the complainant.

While Roberts is, probably, an illiterate man, and for that reason may not appreciate, as fully as an educated man would, the duties and obligations which an agent owes to his principal, and while he may not, for that reason, have fully understood the effect of the transaction which he had with Walker, which culminated in the delivery by Walker of the deed to him, nevertheless, in equity, which views the transaction in the light of common sense and common honesty, the Walker land, when Walker delivered the deed to Roberts, was the land of complainant, charged with the payment to Roberts and Boyle of the debt to which we have above referred. The legal title to the land was, however, in *Roberts*. We do not feel that the complainant, as to the first conveyance to Dabbs, the conveyance to the 39½ acres, has established, as between himself and Dabbs, his claim to relief. The first deed from Roberts to Dabbs does not, it is true, correctly state the amount which Dabbs paid Roberts for the land, and this may, under all the circumstances of this case, cast doubt upon the bona fides of the parties. Roberts, how-

ever, in his negotiations with Dabbs was evidently dealing with a man but little acquainted with real estate transactions, and in this particular transaction we think that all the probabilities are that Dabbs acted in good faith, and that while he may have thought that by obtaining the 39½ acres of the Walker lands for his 80 acres of mineral lands and an additional $250 in money he was making a good trade, he should be protected in his purchase of said 39½ acres. Dabbs has the legal title to the 39½ acres of land, and as to that land his equities appear to be equal to those of complainant; and, this being true, the legal title should prevail.

This situation does not, however, exist as to the other tract of land which was conveyed by Roberts to Dabbs. This purchase was made by Dabbs *after* he had received notice of the claim of complainant. This land is referred to in the testimony of Dabbs as the 28-acre tract, and appears to have been conveyed to Dabbs by Roberts by a deed dated October 23, 1903, upon a recited consideration of $660. As to this land the complainant's equities are greater than those of Dabbs, and that land in equity belongs to complainant.

3. Roberts and Boyle received $250 from Dabbs and 80 acres of mineral lands as the consideration of the conveyance which Roberts made to Dabbs to the 39½ acres of land. This 80-acre tract was afterwards sold by Roberts and Boyle for $800. While it is claimed that they paid large commissions to agents for making the sale of the 80 acres, this 80 acres was, in equity, the land of complainant, and as Roberts and Boyle, in this entire transaction, were practicing fraud upon complainant, we are of the opinion that Roberts and Boyle are chargeable with the entire $800 for which the 80 acres of land was sold. This being true, Roberts and Boyle received, shortly after they obtained the Walker lands,

[Dean v. Roberts, et al.]

$1,050 which belonged to complainant, and which was amply sufficient to pay the $1,000 which they had agreed to loan complainant and the interest thereon. It is therefore evident that as Roberts and Boyle are chargeable in this transaction, in equity, with at least as much money as they loaned Dean, they have no claim, on account of said loan, on said lands. Neither are we disposed to think that, under the circumstances, said Roberts and Boyle have any claim against said Dean which should receive consideration in a court of equity, on account of services rendered by them in disposing of the Texas land for Dean. They violated every trust which was reposed in them by Dean and placed themselves, by their own fraud, in such an attitude towards Dean as to preclude themselves, in a court of equity, from demanding compensation for any services which they may have rendered in effecting the sale.

4. It is our opinion that the deed from Roberts to Dabbs which is dated, according to the testimony of Dabbs, October 23, 1913, and which recites a cash consideration of $660, should be canceled and annulled, and that the legal, as well as the equitable, title in said deed should be vested in complainant. It is also our opinion that the respondents are liable to the complainant for the fair rental value of said lands so sold to Dabbs, from January 1, 1903, until the rendition of a final decree in this cause. Dabbs, according to the evidence, has made improvements upon the said lands, and this rental should be fixed upon a fair rental of said lands, based upon the condition of the lands when Dabbs bought them, and this rental should be credited with that part of the taxes of Dabbs which was created by the value of said lands.

The respondents Roberts and J. W. Davidson and Mary Lee Averette, as administrators of the estate of

[Dean v. Roberts, et al.]

Robert E. Boyle, deceased, are primarily liable for the amount for which, on account of the rent of the said lands of Dabbs, the respondents are liable to the complainant, and the respondent Dabbs should not be required to pay the same if it can be made out of said parties. Said respondents Roberts and J. W. Davidson and Mary Lee Averette, as administrators of said estate of Boyle, are liable to the complainant for the fair rental value of that part of the Walker lands which remains unsold from January 1, 1903, subject to a credit for the taxes which they or either of them have paid on account of the same.

In accordance with the above opinion a decree is here rendered canceling, as a cloud upon the complainant's title, the said deed made by Roberts to Dabbs on October 23, 1903, and vesting the complainant with the absolute fee-simple title to the same.

A decree is also here rendered canceling, as a cloud upon the complainant's title, the conveyance from Walker to Roberts, except in so far as the same relates to the lands described in the fifth subdivision of the complainant's bill of complaint, and vesting in the complainant the absolute title in fee simple to all of said lands described in said deed from Walker to Roberts, except said 39½ acres described in the fifth subdivision of the complainant's bill of complaint, and which 39½ acres belong to Dabbs free from any claim on the part of the complainant. In order that the amount due complainant by the respondents may be ascertained and its payment enforced by appropriate decrees, this cause is reversed, and remanded to the city court of Birmingham, sitting as a court of equity, for further proceedings in accordance with this opinion.

Reversed and rendered in part, and remanded in part.

[Dean v. Roberts, et al.]

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.

## ON APPLICATION FOR REHEARING.

DE GRAFFENRIED, J.—The able and exhaustive brief filed by counsel for appellees on this application for a rehearing, which has been carefully and candidly considered, deserves a reply at our hands.

It seems to us that the equitable principles upon which our conclusions in the original opinion in this case are based flow naturally and logically from the facts as we find them to exist in the record. For this reason we did not load the opinion down with citations of authorities.

1. In this case there was a plea of the statute of frauds. Appellee stresses the proposition that, as the agreement on the part of Roberts and Boyle to pay for appellee *in cash* the boot which was to be paid by Dean and take a mortgage back from Dean to secure this cash payment rested *in parol*, therefore the statute of frauds defeated Dean's right of recovery. On this subject counsel for appellee cite many authorities, among them the following: *Lehman v. Lewis*, 62 Ala. 129; *Long v. King*, 117 Ala. 423, 23 South. 534; *Preston v. McMillan*, 58 Ala. 84; *Whaley v. Whaley*, 71 Ala. 159; *Tilford v. Torrey*, 53 Ala. 120; *Watkins v. Carter*, 164 Ala. 456, 51 South. 318; *Bourke v. Callanan*, 160 Mass. 195, 35 N. E. 460; *Reaves v. Garrett*, 34 Ala. 564; *Hughes v. Letcher*, 168 Ala. 314, 52 South. 914; *Patton v. Beecher*, 62 Ala. 579; *Brock v. Brock*, 90 Ala. 86, 8 South. 11, 9 L. R. A. 287; *Moseley v. Moseley*, 86 Ala. 289, 5 South. 732; *Smith v. Smith*, 153 Ala. 504, 45 South. 168; *Moore v. Campbell*, 102 Ala. 445, 14 South. 780; *Butts v. Cooper*, 152 Ala. 375, 44 South. 616; *Mitchell v. Wright*, 155 Ala. 458, 46 South. 473.

The courts in the cases had under discussion, *resulting* or *constructive* trusts not tainted with actual fraud, and we certainly have no quarrel with the doctrines announced in those cases. Under the facts in this case, if we read the evidence correctly and have come to what appears to be the real truth of this matter, an *actual fraud* was perpetrated upon appellant. "Lord Hardwick said 'that the court adhered to this principle, that the statute of frauds should *never* be understood to protect fraud, and therefore the court will not permit the statute to protect it.' "—*Reach v. Kennedy,* 1 Ves. 125; 1 Perry on Trusts (4th Ed.) § 226.

"It is a principle of universal prevalence that an agent must not put himself, *during the agency*, in a position which is adverse to that of his principal.—1 Parsons on Contracts, p. 93. This rule cannot, perhaps, be more comprehensively and concisely stated than as we find it in the American notes to *Keech v. Sanford,* 1 Lead. Cases in Eq. 53: "Wherever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is *prohibited* from acquiring rights in that subject *antagonistic* to the person with whose interests he has become associated.' " —*Scottish Union & National Insurance Co. v. Dangiax,* 103 Ala. 388, 15 South. 956; *Davis v. Hamlin,* 108 Ill. 40, 48 Am. Rep. 541; *Waller v. Jones,* 107 Ala. 331, 18 South. 277; *Kent v. Dean,* 128 Ala. 600, 30 South. 543.

"Where an agent to purchase *purchases* for *himself,* he acquires *nothing* thereby, though he contributes of his own means to effect it, and the product will belong to his principal."—*Bergner v. Bergner,* 219 Pa. 113, 67 Atl. 999.

[Birmingham Lot Co. v. Taylor.]

"Where an agency has been established, the burden of showing that the relation between the parties has changed *before* the transaction in question rests with the party affirming such change."—*Bergner v. Bergner, supra.*

It seems clear, therefore, that upon reason and authority the complainant, Dean, under the facts of this case, is entitled to the relief which this court has decreed to him, and that the statute of frauds constitutes no defense to this suit.

2. Dabbs bought the land upon which he has seen proper to erect his improvements after he had been notified of complainant's claim. He probably trusted Roberts and Boyle to protect him; but, as he bought with full knowledge of complainant's rights, he made the improvements at his peril, and we know of no principle of equity under which he can claim reimbursement for the value of the improvements so made.

The application for a rehearing is overruled.