[Smith v. Pullum.]

# Smith *v.* Pullum.

## *Bill to Enforce a Trust.*

(Decided November 12, 1913.   Rehearing denied December 18, 1913.
63 South. 965.)

1. *Trusts; Resulting; Bills; Sufficiency.*—A bill alleging that complainant, respondent and a third person agreed to purchase property for $4,500 to be conveyed to a corporation to be formed that $1,650.00 of the stock should be the property of complainant who should advance that amount towards the purchase, that complainant turned over to respondent a check for that amount with which to pay for his interest in the property, that respondent used the check in purchasing the property, taking title in his own name, and that he has failed to convey to complainant his interest, and that it was the purpose of respondent to exclude complainant from any interest in the property, etc., sets forth a cause of action, when reasonably construed, on the theory that that amount of complainant's money passed into the hands of respondent as complainant's contribution to the purchase money of the property, and that the money was used in purchasing the property and authorizes equity to protect complanant's interest in the property.

2. *Same; Estoppel.*—Where respondent purchased property under an agreement that it should be conveyed to a corporation to be formed, and that upon paying to respondent a specific part of the price complainant should receive the capital stock in an amount equal thereto, and defendant took title in his own name, he was estopped to assert that the purchase was for his sole benefit, or that complainant could not, at his election, follow the money into the property and through equity obtain the money out of that property.

3. *Same.*—Where respondent purchased the property under an agreement that complainant should have an interest therein equal to the amount paid by complainant and complainant paid to respondent that sum, the fact that respondent purchased the property in his own name and paid therefor by check drawn on his general account which exceeded the amount of the check, excluding the sum paid by complainant and deposited by respondent on his general account would not defeat complainant's equitable right.

4. *Same; Equitable Relief.*—A bill seeking to establish a right in favor of complainant to property purchased by respondent in his own name, to the amount paid by complainant to respondent towards the purchase price and praying for a decree that complainant is entitled to an interest in the property equal to the amount of money advanced and for the establishment of a resulting trust to that extent, or for a decree that complainant has a lien on the property for the price, and that the property be sold for the satisfaction thereof, or for a decree adjudging complainant and defendant to be partners, and for a dissolution of the partnership, or for any other relief as the facts may

[Smith v. Pullum.]

justify, does not pray for inconsistent relief, since the theory of complainant is to have his interest in the property ascertained, or to obtain the part of the purchase price furnished by him taken out of the property, and the court has jurisdiction to grant relief.

5. *Equity; Pleading; Proof; Variance.*—There is no variance between a bill alleging that defendant purchased property under an agreement with complainant and a third person whereby complainant should furnish part of the price and have a corresponding interest, and that complainant paid that amount by check delivered to defendant, and the proof that complainant mailed the check to a third person, such third persons endorsed the check and placed the proceeds to his personal credit, and then gave his personal check to respondent, who obtained the money thereon, such as to deny complainant relief.

APPEAL from Geneva Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by W. K. Pullum against G. W. Smith to enforce a trust in property. Decree for complainant and respondent appeals. Affirmed.

A. E. PACE and ESPEY & FARMER, for appellant. There is nothing looking to the creation of a partnership, and the agreement does not even contemplate such a thing. —*Chisholm v. Cowles*, 42 Ala. 181; 22 A. & E. Enc. of Law, 55; *Sabel v. Savannah Co.*, 135 Ala. 383. The trust sought to be created is a resulting trust, and unless the money was actually used in buying the property, actually paid as part of the purchase price, there was no resulting trust.—*Robinson v. Truss*, 44 Ala. 227; *Tilford v. Torrey*, 53 Ala. 120; *Whaley v. Whaley*, 71 Ala. 161; *Watkins v. Carter*, 164 Ala. 459. The bill is filed in a double aspect and if complainant is not entitled to relief in both aspects, he cannot recover in either.—*Seals v. Robinson*, 75 Ala. 368; *Micou v. Ashurst*, 55 Ala. 607. The amendment makes a case of inconsistent and contradictory allegation as compared with the allegations of the original bill.—*Lehman v. Lewis*, 62 Ala. 129; *Prestwood v. McMillan*, 58 Ala. 84; *Long v. King*, 117 Ala. 328. There was a variance be-

tween the allegation and the proof.—*Lehman v. Lewis, supra; Patton v. Beecher,* 62 Ala. 579; *Hammacker v. Hammacker,* 84 Ala. 231; *Alston v. Marshall,* 112 Ala. 621.

W. O. MULKEY, for appellee. Every question in this case is settled adversely to the contention of respondents by the authorities cited by the chancellor in his decree.—*Deming v. Lee,* 56 South. 921; *Milner v. Rucker,* 112 Ala. 360; *Manning v. Pippin,* 95 Ala. 537.

DE GRAFFENRIED, J.—This litigation grew out of the purchase by G. W. Smith of certain telephone property at Slocomb, Ala. The bill of complaint, which was filed by W. K. Pullum against G. W. Smith, alleges that Bigbie and Winslett owned a telephone line which they were willing to sell for $4,500; that G. W. Smith desired to become interested in this property; that Wm. Pullum, who was insolvent, desired, also, to become interested in it, and to assume its management; and that it was finally agreed that G. W. Smith should buy the property for the $4,500, with the understanding that W. K. Pullum, a brother of said Wm. Pullum, was to furnish $1,650 of the purchase money. The bill further alleges that it was agreed between the three parties, viz., G. W. Smith, William Pullum, and W. K. Pullum, that upon the purchase of the property for the above sum a corporation was to be formed, with a paid in capital of $4,500; that $1,650 of the said capital stock was to be the property of W. K. Pullum, $600 of said capital stock was to be the property of said Wm. Pullum, and $2,250 of said capital stock was to be the property of said G. W. Smith. The bill further alleges that it was understood that G. W. Smith, who appears to be a man of means, was to loan said Wm. Pullum the

said $600. The bill further alleges that it was under-
stood that, when the property was bought, the deed
should be taken in the names of the said G. W. Smith
and W. K. Pullum, and should show their respective in-
terests, but that the name of said Wm. Pullum should
not *then* appear as a purchaser because of pending pro-
ceedings in bankruptcy against him. The bill further
alleges, however, that it was understood and agreed
that, when the proceedings in bankruptcy were termi-
nated, then Wm. Pullum was to own $600 of said capi-
tal stock, as above indicated, and that the corporation
was then to be formed.

In order that the meaning of this court may be made
plainly to appear, we copy the following from the bill
as amended: 'The complainant would further show
that the said G. W. Smith was conducting said pur-
chase, and was looking after said matters for him, and
that complainant turned over to the said G. W. Smith
through his brother, William Pullum, a check for $1,-
650, with which to pay, and with which he did pay, his
interest in said purchase; that said G. W. Smith did use
said $1,650 in paying the purchase price of the said tel-
ephone exchange and outfit; but complainant avers that
said G. W. Smith caused and procured a deed to the
said property to be taken in the name of the said G.
W. Smith, and for some reason failed to have the deed
taken to the parties named, and failed to have the inter-
est of the complainant in said property conveyed to him
as was agreed upon. And complainant avers that he
later spoke to the said Smith about the condition of
the said conveyance, and the said Smith assured him
that the same would be all right, and that he (com-
plainant) would hold his interest in said property as
though the deed had been made to him as his interest is,
and that the reason the deed was taken in the name of

the respondent was that William Pullum was involved in some way in bankruptcy matters, and, to avoid any entanglement on that score, that respondent made the deed straight to himself. He further assured the complainant that he would have the matter straightened out, and see that he was protected. * * * And complainant would further show that at the time of the said agreement, and prior thereto, William Pullum was indebted to the respondent in a large sum, to wit, $1,800; that the said respondent had no security for the same, and that there was no prospect in sight of collecting the same; that said respondent was paid the said $1,650 placed or put in said business by complainant; that said respondent then and there conceived the idea of collecting the debt due him by William Pullum, and to that end applied said $1,650 thus paid by complainant as his part of the purchase money to the said debt due respondent by William Pullum, such application being made in the absence of, and without the knowledge of, the complainant; that respondent, in furtherance of such purpose and design, and in furtherance of the purpose and design to exclude complainant, had deed to the telephone property executed to himself; that immediately thereafter the said respondent executed to William Pullum a deed for an undivided one-half interest in said telephone property; that said deed was executed on the 31st day of January, 1910, and two days after the execution of the deed by Bigbie and Winslett to respondent; that said deed was filed for record in the office of the judge of probate February 24, 1910; that on February 22, 1910, the said respondent caused the said William Pullum to execute to him a mortgage in the sum of $2,250, and to convey in said mortgage his purported undivided one-half interest in said telephone property; and that said mortgage was

[Smith v. Pullum.]

also filed for record on February 24, 1910. And complainant would further show that, in furtherance of said purpose and design on the part of respondent to use the money of complainant in the payment of the debt of William Pullum, and to exclude complainant from any interest therein, the said respondent, on January 14, 1911, procured from William Pullum an agreement reciting that the said William Pullum was indebted to respondent for an undivided one-half interest in said telephone property, and also a dissolution of the said telephone business between the said William Pullum and G. W. Smith, and on the same day, as a part of the same transaction, procured from the said William Pullum a deed conveying to G. W. Smith the purported one-half interest of the said William Pullum in said telephone property. And the complainant further avers that the respondent well knew that the complainant, in good faith, paid said $1,650 for an interest in the said telephone property, and that the respondent immediately undertook to so manage and operate the said transaction as to collect the debt due him by William Pullum, and to conceal the interest of the complainant in and to said property."

The *thought* which the above-quoted excerpt from the bill of complaint conveys to the candid mind is that, under the agreement to which we have above referred, $1,650 of the complainant's money went, to the knowledge of the respondent, into the hands of the respondent, that it went into the hands of respondent as complainant's agreed contribution to the purchase money of the telephone line, and that it, in fact, was used by the respondent in paying for the telephone line, but that the respondent, in *violation* of the confidence which the complainant had reposed in him, and in *violation* of the agreement under which the money went into the

hands of the respondent, credited the money on a debt due by William Pullum to respondent, and took the conveyance to the telephone line in his own name.

The quoted paragraph must be given a reasonable construction. Each sentence in it must be read and interpreted in the light of each of its other sentences, and the interpretation which we have above placed upon the paragraph gives to each sentence its full meaning and harmonizes every apparent conflict in the paragraph. In addition to the above, we direct specific attention to the fact that the paragraph *directly* and *unequivocally charges* that the respondent, in the purchase of the telephone line, was acting, not for himself *alone,* but that he was also acting for the complainant. The opening sentence of the quoted paragraph makes *this* extremely plain. This sentence is as follows: "The complainant would further show that the said G. W. Smith was conducting said purchase, and was looking after said matters for him, and that complainant turned over to the said G. W. Smith through his brother, William Pullum, a check for $1,650, with which to pay, and with which he *did* pay, *his* interest in said purchase."

We deem it wise to call attention to these matters, for they are *not* unimportant in their bearings upon the true equities of the parties in this case.

1. In the case of *Dean v. Roberts, et al.,* 182 Ala. 221, 62 South. 44, we quoted with approval, and, in that case, enforced the following rule announced in *Kech v. Sandford,* 1 Lead. Cas. in Equity, 53, viz.: "Wherever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person or of the law, that he becomes interested for him, *or interested with him,* in any subject of property or business, he is *prohibited* from acquiring rights in that

subject antagonistic to the person with whose interest he has become associated."

If, therefore, G. W. Smith bought the telephone property under the circumstances set out in the above-quoted paragraph of the bill of complaint, he is not, under the above rule, in a position to claim that his purchase, although the deed was taken in his own name, was for his sole benefit, or that the complainant, at his election, has not the right to follow that money into the telephone line, and, through a court of equity, get that money out of the telephone line.

2. The prayer of the bill of complaint is as follows: "Complainant further prays that, upon the final hearing of this cause, a decree be rendered to the effect that complainant is entitled to an interest in said property commensurate with the money advanced by him, and a resulting trust be established in said property in favor of complainant to the extent of such interest, or that a reference be ordered before the register to ascertain the amount invested by complainant in said purchase, and that it be decreed that complainant has a lien on said property for said purchase price, and the said property be sold for the satisfaction thereof, or that it be decreed that complainant and the said Smith were partners, and that the property is partnership property, and that complainant's interest in said venture be ascertained and declared, and that a decree be rendered ordering a sale of said property for the payment of the amount thus ascertained to be due, and that said partnership be dissolved, or, if complainant has prayed for the wrong relief, then he prays for such other relief, both general and special, as under the facts and law he may be entitled to."

We find no inconsistencies in any of the alternative reliefs above prayed. There is, in each alternative relief

prayed, a recognition of the validity of the conveyance by Bigbie and Winslett to G. W. Smith. The effort of complainant, in the specific alternative reliefs prayed, is to have *his* interest in the *purchase ascertained,* or to get his money—the part of the purchase money furnished by him—out of the property purchased. It cannot be affirmed that in some of the aspects of the bill there is a claim *against,* and in other aspects of the bill a claim *under,* the conveyance. Every aspect of the bill recognizes the *validity* of the purchase by Smith of the telephone line.

3. The respondent, in his answer, denies all of the material allegations of the bill. He admits the receipts of the $1,650 from William Pullum, but claims that the receipts of that money had nothing to do with the purchase of the telephone line, that William Pullum owed him more than $1,650, and that this money was paid to him by William Pullum on his debt. The respondent expressly denies, in his answer, that he had any negotiations with complainant with reference to the purchase of the telephone line, or that he, in any way, agreed with complainant that he would invest $1,650 of complainant's money in the purchase of the said line. The answer challenges sharply the truth of the allegations of the bill, and the evidence of the complainant and of the respondent is in sharp conflict.

4. It is claimed by respondent that there is a variance between the allegations of the bill and the proof which was offered by complainant in support of the bill. The proof shows that complainant mailed to his brother, William Pullum, a check for $1,650, that William Pullum indorsed this check, and placed the proceeds to his (William Pullum's) personal credit in a bank, and that William Pullum gave his personal check to G. W. Smith for said $1,650 on said bank. The money,

however, which G. W. Smith received in this way *was the*
$1,650 which *W. K. Pullum* sent to *William Pullum.* If
that $1,650 was sent by W. K. Pullum to William Pul-
lum, to be handed to G. W. Smith as W. K. Pullum's con-
tribution to the purchase money of the telephone line,
then unquestionably G. W. Smith received that money.
While G. W. Smith did not receive the *check* which W.
K. Pullum sent to William Pullum, he *did* receive the
*money* which the check represented. If it be conceded
that G. W. Smith *knew,* when he received the $1,650 from
William Pullum, that the money was the $1,650 which
W. K. Pullum had sent as his contribution to the pur-
chase of the telephone line, then, when G. W. Smith
bought that telephone line, *that money,* as between G.
W. Smith and W. K. Pullum, went, in equity, into the
purchase of the telephone line. It is true that G. W.
Smith testifies that, when William Pullum paid him the
$1,650, he placed it to his general credit in a bank, and
that, when he paid for the telephone line, he gave a
check on that general account, and that, after this check
for the purchase money of the telephone line was paid,
there was still left to his credit in said bank several
thousand dollars. All this may be true; but this in no
way comes to the aid of respondent.

"Although courts of equity have not made general
definitions stating what is fraud, and what is not, they
have not hesitated to lay down broad and comprehensive
principles of remedial justice, and apply these principles
in favor of innocent parties suffering from the fraud of
others. These principles, though firm and inflexible, are
yet so plastic that they can be applied to every case of
fraud as it occurs, however new it may be in its circum-
stances. *The leading principle of this remedial justice is
by way of equitable construction to convert the fraudu-
lent holder of property into a trustee, and to preserve the*

*property itself as a fund for the purpose of recompense.*" —1 Perry on Trusts (4th Ed.) § 170.

Having made an agreement with W. K. Pullum that he would buy the telephone property for $4,500, that W. K. Pullum was to furnish $1,650 of the purchase money, and that W. K. Pullum was to own an undivided interest in the property proportionate to his part of the purchase money, having received from W. K. Pullum $1,650 as his part of the purchase money, and *then* having bought and taken possession of the telephone property, the said G. W. Smith cannot, in equity, be permitted to defeat W. K. Pullum's claim upon the property by showing that he, in fact, had not used the $1,650 in the purchase of the property. In equity he is estopped from showing that he had not so used the money.— *Dean v. Roberts, supra.*

5. The acute question in this case is not one of *law*, but one of *fact.* We have carefully examined the evidence which was offered on the part of the complainant and of the respondent. The chancellor came to the conclusion that under the facts the complainant was entitled to a decree ordering the property to be sold for the satisfaction of his claim upon it for the $1,650, and the interest.

A careful consideration by us of all the evidence convinces us that, in his finding of fact, the chancellor committed no error. This being true, we are of the opinion that the chancellor was correct in his decree, and that the decree of the court below should be affirmed.

We do not discuss the facts, as a discussion of the facts would prove of service to no one.

Affirmed.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.